Mid-State Baptist Hospital, Inc.

*v.*

City of Nashville.

366 S.W.2d 769.

(*Nashville,* December Term, 1962.)

Opinion filed April 3, 1963.

WALTER C. LEAVER, JR., and FRANK S. KING, JR., Nashville, for appellant City of Nashville.

ANDREW D. TANNER, Nashville, for appellee Hospital.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The question in this case is, as stated by the appellee:

"Where property is and has been tax exempt for many years, and the tax exempt institution owning same, commences construction of a structure on said property, to be used as a ward of a hospital and for oc-

cupancy by members of the hospital staff, with a *portion* of the completed building to be used commercially, does the property continue to be tax exempt until the building is completed and put into *actual use?*

Briefly the facts to be considered in answering this question are that the Hospital began construction of a structure in the latter part of 1958. The Hospital had owned this property for many years and it had been tax exempt all that time because the Hospital was a charitable institution under our statutes. The Hospital applied in 1957 for and secured a change through the Zoning Commission of the City of Nashville of the zoning regulations as to the portion of their property here in question from that of residential to business. On January 10, 1959, the tax assessment date, only the concrete frame for a portion of the building had been poured. General excavation and rough grading about the structure had been done. Sewer and water pipes were in the process of underground installation. No floor slab had been poured in the basement of the structure. The frame for the sixth, or top, floor had not been poured. As of that time this incompleted hull of a building could not be used for any purpose. The building was not completed and put into use until after January 1, 1960, and since that time, January 1, 1960, and for the year, 1960, the Hospital has paid taxes on this assessment. There is no question as to the valuation of this structure or as to the amount of the taxes. The only question is whether or not the Hospital should pay the taxes for the year, 1959, it having taken out a building permit in 1958 for this structure, but nothing had been done other than as just said.

The City takes the position that when the Hospital indicated by acquiring a change in the zoning regulations

and by taking out a building permit for this structure, that this having been done before January 10, 1959, that the Hospital owes taxes for the year, 1959. To the contrary the Hospital takes the position that since the structure was not completed so as to be used for any commercial purposes prior to January 10, 1959, it does not owe such taxes and that the determinative question is the *use* for which the property was being used as of or before January 10, 1959.

The question is not easy of solution. From our investigation and the very excellent briefs filed by both parties herein there are no cases on the point. The nearest case on the point that we have found is that of *New Orleans Bank & Trust Co. v. City of New Orleans,* 176 La. 946, 147 So. 42. In this case certain property was exempt from taxation prior to the taxable date of January 1 of the year involved, when, due to financial obligations, this property was seized under a writ of *fieri facias,* but was not sold under this writ until after the tax assessing date. The Louisiana court held that this being true and no abandonment having been made of this property prior to the tax assessment date of January 1, the ownership of this property was still in the tax exempt corporation and that the property was not taxable. The primary basis of the decision is that under the facts of that case there had been no abandonment of the property for charitable purposes until after the sale of the property.

■ The court makes this statement, which is applicable to the situation in this State, to-wit:

"The taxable status of property relates to a certain day in each year. There must be some day of the year as of which the power to tax property at all is deter-

mined. That day fixes the power to tax with reference to whether the property was exempt from taxation on that date. If the property is exempt on the tax day, it is not liable for taxes during that fiscal year, although it afterwards goes into the hands of those not exempt.''

The taxable day in Tennessee is January 10 of each year. Sec. 67-606, T.C.A. As authority for the quotation last made the Louisiana court cites Mr. Cooley, Taxation, Vol. 2, page 1500, sec. 712. This rule is applicable in Tennessee. Under such a rule, if the Hospital had transferred the property herein to a third party who was not tax exempt prior to January 10, clearly the City would have been correct in assessing it for taxes as of January 10, 1959. This, of course, did not happen in this case, because the property was not transferred to a third party but the Hospital had indicated its intention to convert a small portion of its tax exempt property for commercial purposes wherein it would be taxable.

■ The Chancellor held, ''The property having been exempt for years, its exemption would not change until the property was put to use as commercial, or some other use contrary to the Charter of the Hospital.'' The Chancellor relied upon, as do both the City and the Hospital, the recent case of this Court of *City of Nashville v. State Board of Equalization,* 210 Tenn. 587, 360 S.W.2d 458. So far as this case is concerned the principle it construes is the present statute (sec. 67-502, T.C.A.) referring to tax exempt property. It is well reasoned case and shows among other things that as far as this State is concerned we have no constitutional exemption as to property of the kind but that under Art. II, Sec. 28, of our Constitution the Legislature is given the right to exempt certain property. This case then goes on and applies this exemption

statute to the property there in question, and many times in the opinion the expression "used exclusively" or "occupied by such institution or its officers exclusively for carrying out thereupon one or more purposes" is used. It is argued by the Hospital, of course, that the property under the facts of the instant case is not now being used for commercial purposes, while the City argues that, under the statements in this case since the construction was going on with the intention of building a partially commercial building on the property, it is not being used exclusively for the charitable purposes for which the Hospital organized. This case though does not answer the question here presented.

This case does interpret the proposition that it is the *use* of the property in question rather than the charitable character of the owner which determines the right to claim the exemption. Clearly, when a charity embarks in business for profit it becomes liable for taxation as any other business establishment. This is determined by *City of Nashville v. Board of Equalization,* supra. See also Annotations in 34 A.L.R. 659, 62 A.L.R. 334, and 108 A.L.R. 292.

The Hospital cites a number of cases from foreign jurisdictions wherein the claim of exemption was made when the Hospital had acquired property and started building on it and things of that kind, and the court held against the exemption and based their decision on the proposition of actual use and things of that kind and held that since the property was not being actually used for a charitable purpose as of the taxable date it was not exempt. Such cases are *Cedars of Lebanon Hospital v. Los Angeles County,* 35 Cal.2d 729, 221 P.2d 31, 15 A.L.R.2d 1045; *Dougherty v. City of Philadelphia,* 112 Pa.Super.

570, 172 A. 177; *First Baptist Church of San Fernando v. Los Angeles County,* 113 Cal.App.2d 392, 248 P.2d 101, and others. The reason for citing these cases is to show that even though construction had been started towards building something to be used for a charitable purpose since the building was not actually completed and then being used, it would not be exempt. This, of course, is the converse of the question here. It is said that since it would not be exempt while it is thus being constructed because it was not actually being used for charitable purposes, that then when property had been for many years tax exempt because owned and used by a charitable institution even though they had started construction to change the tax exempt property to taxable property it would not become taxable until it was complete and put in use. This is very plausible reasoning. There are cases to the contrary, such as *Village of Hibbing v. Commissioner of Taxation,* 217 Minn. 528, 14 N.W.2d 923, 156 A.L.R. 1294; *El Jebel Shrine Ass'n v. McGlone,* 93 Colo. 334, 26 P.2d 108; *Smith, County Assessor v. Zion Evangelical Lutheran Church,* 202 Okl. 174, 211 P.2d 534, and others. The language of the exempting constitutions in each of those cases is different from that herein.

As said above the statute (Sec. 67-502, T.C.A.) was construed in *City v. Board of Equalization,* supra, and is quoted from extensively. Under the first paragraph of sub-section (2) of this statute the real estate that is exempt is set forth. The second paragraph of this sub-section (2) sets out that ''the property of such institutions shall not be exempt if the owner, or any stockholder, officer, member or employee of such institution shall receive or may be lawfully entitled to receive any pecuniary profit from the operations of that property in competition

with like property owned by others which is not exempt
* * *.'' To our mind when such a restriction follows and
is applied to a situation as in the instant case, where the
property has long been exempt, it would necessarily be in
the minds of the Legislature in enacting such statute that
said property would remain exempt until these restric-
tions might occur, that is, that they should receive or were
lawfully entitled to receive precuniary profit, etc., from
the property thus attempting to be changed from tax ex-
empt to taxable property.

What has just been said and our construction of
what is necessary in a case of this kind becomes more
obvious when we know that in Tennessee, contrary to
most other states, a tax exemption in favor of religious,
scientific, literary and educational institutions is liberally
construed rather than strictly. *Sunday School Board of
Southern Baptist Convention v. Evans,* 192 Tenn. 495, 241
S.W.2d 543; *City of Athens v. Dodson,* 154 Tenn. 469, 290
S.W. 36; *Cumberland Lodge, No. 8, F. & A. M., v. City of
Nashville,* 127 Tenn. 248, 154 S.W. 1141. The recent case
of *City of Nashville v. State Board,* supra, does not hold
to the contrary of this liberal interpretation rather than
strict interpretation, but applies to the Act there in ques-
tion, and is an interpretation of just what the Act says
and means. Thus when we give the language of this stat-
ute under the factual situation here involved a liberal
interpretation in favor of this exemption which had
existed for years, it certainly would clearly follow, as
an incident, a reasonable opportunity by the institution
entitled to this tax exemption of its property, an oppor-
tunity of placing the property on which it is building in
such a character as it would clearly appear that it was
for commercial rather than a charitable cause.

■ Clearly, under all the authorities the use of the property is the basis of tax exemption under the statute passed pursuant to our constitutional provisions heretofore referred to, and when real estate is acquired for such charitable corporations and held for that purpose before it can be changed to taxable property it must appear that it is as of January 10th of the taxable year being used for non-charitable purposes. The property herein was not put to an actual physical use by this Hospital for non-charitable purposes prior to January 10, 1959. The better rule is that it requires *use* to take real property off the tax rolls. When real property is not on the tax rolls by reason of being exempt it should take *use* to put it back on, not intention.

Thus to us it seems reasonable to say and conclude that since this property had long been immune from taxation and since the statute, above referred to, more or less means that, when property thus immune has been put back into competition with other properties by someone receiving rents, etc., from the property, the logic of the situation is that until this property is thus in a position to be used in competition with other properties it should hold its immunity from taxation until this happens. Under the factual situation as hereinbefore set out this did not occur in 1959 and therefore the hospital would not be liable for this tax for that year. From what has been said above it results that the decree of the Chancellor is affirmed.