George Peabody College for Teachers, Appellant,

*v.*

State Board of Equalization et al., Appellees.

407 S.W.2d 443.

(*Nashville,* December Term, 1965.)

Opinion filed September 27, 1966.

K. Harlan Dodson, Jr., Nashville, of counsel, Hooker, Keeble, Dodson & Harris, Nashville, for appellant.

George F. McCanless, Attorney General, Milton P. Rice, Assistant Attorney General, Nashville, for State Board of Equalization.

Seymour Samuels, Jr., Deputy Metropolitan Attorney, Nashville, for Metropolitan Board of Equalization and Clifford Allen, Tax Assessor, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an appeal from the Chancery Court for Davidson County, Tennessee.

Appellant here, petitioner below, sought to have that court review, by petition for certiorari, the action of the State Board of Equalization. That Board held that certain apartments and other dwelling units owned by appellant and used as living quarters for married students and their families were subject to an ad valorem tax for 1964, to the extent that they were occupied by persons other than students, even though such other persons are members of a student's family. The trial court dismissed appellant's petition for certiorari and upheld the action of the State Board of Equalization. The trial court and Board of Equalization both obviously relied upon the prior interpretation and application by this Court of T.C.A. sec. 67-502(2) in *City of Nashville v. State Board of Equalization*, 210 Tenn. 587, 360 S.W.2d 458 (1962).

The appellant has timely perfected an appeal from that judgment.

The facts are found in the testimony before the State Board of Equalization, and are generally undisputed. George Peabody College for Teachers is a non-profit educational institution of higher learning. It has a considerable graduate program involving older students, many of whom are married. Many of the students are already professional teachers and leaders in education; a large number of them are students from foreign countries. In many cases the off-campus community cannot, or will not, provide housing at prices these students can afford to pay. The foreign students often have a difficult time acquiring housing. Peabody College, then, has desired to provide these students housing on its own property located on or adjacent to the main campus.

The property involved consists partially of a number of old residences, containing usually two apartment units, on both sides of 18th Avenue, South. There is also a modern multiunit structure on the west side of 18th Avenue, South, called the ''Garrison Apartments''. Some of the apartment units in the old residences are occupied by unmarried students. All of the units in the Garrison Apartments are occupied by married students with their spouses and children. The older residences were purchased for land utilization purposes, and the intent of the college is to remove them in the future, when the land is required for other necessary college purposes. The apartments and houses are under the general supervision of the officials of the college, but they are not monitored in the customary way the dormitories on the main campus are monitored.

It is to be remembered that whatever the legislative and judicial branches of the government may have said, or may say in this instance, is circumscribed by two sections of the Constitution of the State of Tennessee. They are Article 2, sec. 28, and Article 11, sec. 12, which read as follows:

Art. 2, Sec. 28. *Taxable property—Valuation—Rates.* —All property real, personal or mixed shall be taxed, but the Legislature may except such as may be held by the State, by Counties, Cities or Towns, and used exclusively for public or corporation purposes, and such as may be held and used for purposes purely religious, charitable, scientific, literary or educational, and shall except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct product of the soil in the hands of the producer, and his immediate vendee.

Art. 11, Sec. 12. *Education to be cherished—Common school fund—Poll tax—Whites and negroes.*—Knowledge, learning, and virtue, being essential to the preservation of republican institutions, and the diffusion of the opportunities and advantages of education throughout the different portions of the State, being highly conducive to the promotion of this end, it shall be the duty of the General Assembly in all future periods of this Government, to cherish literature and science.

The sole question raised by this appeal is whether George Peabody College for Teachers, the appellant, is entitled to an exemption from ad valorem taxation by virtue of T.C.A. sec. 67-502(2), on properties owned by it and used as housing facilities for married students and families. The statute in question, T.C.A. sec. 67-502(2)

read, at the time of the assessment of the taxes here involved, in pertinent part, as follows:

67-502. *Exemptions generally.*—The property herein enumerated shall be exempt from taxation.

\* \* \* \* \* \*

(2) The real estate owned by any religious, charitable, scientific or educational institution occupied by such institution or its officers exclusively for carrying out thereupon one (1) or more of the purposes for which said institution was created or exists, and the personal property of any such institution used exclusively for one (1) or more of the purposes for which such institution was created or exists.

It might be appropriate to note here that since the decision of the State Board of Equalization, the Legislature has acted to insure that, in the future, property of the nature here involved will not be taxed, by enactment of the following subsection to T.C.A. sec. 67-502:

(11) The real estate owned or leased by an educational institution and used for dormitory purposes for its students, even though other student activities are conducted therein, and even though the student's spouse or children may reside therein.

An excellent review of the legislative acts preceding what is now T.C.A. sec. 67-502(2) is set forth in *City of Nashville v. State Board of Equalization,* supra. The first act of consequence is Chapter 105 of the Public Acts of 1883, which exempted

\* \* \* all property belonging to any religious, charitable, scientific, literary, or educational institution, and actually used for the purposes for which such institution was created.

Chapter 435 of the Public Acts of 1899 significantly changed the law to exempt the following:

All property belonging to any religious, charitable, scientific, or educational institution when used *exclusively* for the purpose for which said institution was created, or is unimproved and yields no income. All property belonging to such institution used in secular business and competing with a like business, that pays taxes to the state shall be taxed on its whole or partial value in proportion as the same may be used in competition with secular business. (Emphasis supplied).

Chapter 602 of the Public Acts of 1907 reenacted, in substantially the same words, this provision of the 1899 Act.

No change was made thereafter until the Legislature enacted Chapter 47 of the Public Acts of 1935, which was T.C.A. sec. 67-502(2) in 1964, which is the year for which the taxes involved have been assessed. It is this statute which is determinative.

A comprehensive review of the Tennessee cases involving this exemption from taxation is contained in the opinion of the Court in *City of Nashville v. State Board of Equalization,* supra. A further review seems unnecessary.

■ Since the decision of that case, this Court, in *Mid-State Baptist Hospital, Inc. v. City of Nashville,* 211 Tenn. 599, 366 S.W.2d 769 (1963), has emphatically restated the proposition that in this State, contrary to most other states, tax exemption in favor of religious, scientific, literary and educational institutions are liberally construed, rather than strictly. It is further pointed out that the opinion in *City of Nashville v. State Board of Equali-*

*zation,* supra, in nowise dilutes the rule of liberal interpretation.

Much emphasis is placed upon the latter case by the appellees here; and it is obvious that the trial court felt that case was controlling of the decision in the instant case. However, this Court is not of opinion that that case necessitates a finding in favor of the tax in the instant case. That case involved the imposition of an ad valorem tax upon a cafeteria, snack bar, and parking lot operated in connection with a publishing house and book store owned by the Sunday School Board of the Southern Baptist Convention. This Court, in that case, concluded that the properties there in question were not being used exclusively for a religious purpose, as required by T.C.A. sec. 67-502(2). The case at bar is factually different and more analogous to *State v. Fisk University,* 87 Tenn. 233, 10 S.W. 284 (1888). In that case, the Supreme Court concluded that a piece of property owned by the University and used for the cultivation of vegetables to be used for the feeding of students, was exempt from taxation under the exemption statute in effect at that time. While that statute was, to some degree, different from the present, the principle there involved was very much the same; that is, that when property is used for a purpose directly incidental to the primary purpose, education, it is to be regarded as exempt from taxation. The wisdom imparted in that opinion is as valid now as it was at the time of delivery in 1888.

It is to pay tribute to a distinction without a difference to say that property used for the feeding of students is immune from taxation, while property used for the housing of students is liable for taxation. Both uses are directly incidental to, and indeed an integral part of, the educational purpose of the institution. Both have histori-

cally been provided by educational institutions. It is a fact too clear to be questioned that in the last twenty-five years there has been an enormous increase in the number of married students attending college. This has been caused, to some degree, by students attending college under the GI Bill, and also by the fact that the demands of our more complex society require students to remain in school or to return to school for postgraduate education. This Court is of the opinion that it would be unreasonable and unrealistic to expect these married students to live apart from their spouses and/or children. This Court is well aware of the fact that large sums from State educational funds are expended to provide housing for married students, of the very sort here involved, in connection with State operated educational institutions.

 This Court concludes that while the cafeteria, snack bar, and parking lots involved in *City of Nashville v. State Board of Equalization,* supra, were merely coincidental to the primary purpose of that institution (religion), the housing facilities here involved are directly incidental to, and as said before, an integral part of, the process of college and university education.

In what we have just said lies the difference in the situation presented in the case at bar and that before this Court in the *City of Nashville v. State Board of Equalization,* supra. The difference is a real one and is essential to the success and development of privately operated educational institutions.

For the reasons stated, the judgment of the court below is reversed, the assessment quashed, and costs assessed against appellees.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.