MEMPHIS DEVELOPMENT
FOUNDATION,
Petitioner-Appellee,

v.

STATE BOARD OF EQUALIZATION, .et al., Respondents-Appellants.

Court of Appeals of Tennessee,
Middle Section.

June 30, 1983.

Permission to. Appeal Denied by
Supreme Court June 20, 1983.

Michael W. Catalano, Asst. Atty. Gen., Knoxville, for respondents-appellants.

Rosenfield, Borod & Kremer, P.C. by Ronald S. Borod, Serena A. Crawford, Memphis, for petitioner-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.

(With Concurrence of Participating Judges, The Original Opinion Has Been Abridged).

The petitioner, Memphis Development Foundation, filed this suit for judicial review of an administrative decision of the State Board of Equalization in respect to the exemption of the property of petitioner known as "The Orpheum Theatre."

Petitioner is a not-for-profit corporation organized for:

charitable, literary and educational purposes to provide leadership and financial assistance to the projects and undertakings for the improvement of the public peace, health and safety, civil development and social welfare in the Memphis metropolitan area and to participate in the programs for the elimination of community deterioration and slum conditions and to promote urban redevelopment, and enhancement and preservation of community job opportunities and other projects conducive to the progress of the commu-

nity and the furtherance of which it may exercise all its lawful powers, . . . .

In pursuit of said purposes, petitioner purchased the Orpheum Theatre, repaired and renovated it and made it available to theatrical groups on a rental basis.

The State Board determined (1) that, effective January 1, 1978, 50% of the auditorium should be exempt; (2) that, effective January 1, 1980, the offices of the petitioner and furnishings therein should be exempt; and (3) that the remaining portions of the building should not be exempt. The Chancellor affirmed the Board as to issue (3). As to issues (1) and (2) the opinion of the Chancellor states:

A 50% exemption was approved by the Assessment Appeals Commission for the auditorium.

The Foundation argues that the denial of exemption for 50% of the auditorium and associated areas violates the statute and the Constitution because (1) the Foundation is entitled to a 100% exemption, or, in the alternative, (2) because the proration formula used by the Commission is incorrect.

This Court affirms the Commission's decision that the Foundation is not entitled to a 100% exemption for the auditorium, since some of the use of the auditorium is by for-profit organizations for a nonexempt purpose and the Foundation receives rent in excess of the amount allowed by the statute.

The Foundation argues that the proration formula is incorrect. Since the use of the auditorium for for-profit performances is a noncharitable use, the State Board of Equalization is authorized to grant an exemption for only the pro rata portion actually used purely and exclusively for religious, charitable, scientific, or educational purposes. T.C.A. § 67–513(a). Various formulas for proration have been used in previous cases. *See, e.g., Book Agents of the Methodist Episcopal Church, South vs. State Board of Equalization,* 513 S.W.2d 514, 525 (Tenn. 1974) (dollar volume of exempt activity as compared with the entire volume of business done); *Tusculum College vs. State Board of Equalization,* 600 S.W.2d 739, 740 (Tenn.App.1980), *cert. denied* (1980) (50% exemption for President's residence because of partial use for college meetings and entertainment).

This Court is unable to review adequately the decision of the Assessment Appeals Commission to exempt 50% of the auditorium because it is unclear from the Findings of Fact and Conclusions of Law how the Commission arrived at the 50% figure.

The Foundation argues that the 50% figure must have come from a comparison of the number of for-profit performances with the number of not-for-profit performances. This formula would be improper as a matter of law because it ignores the amount of time during the year in which the auditorium is idle, and in effect makes that time taxable. On days when no performances are taking place, the Foundation is still purely and exclusively occupying and using the theatre for its charitable purpose of redeveloping and restoring this historic structure in a blighted area.

Once property has been put to a charitable use sufficient to take the property off the tax rolls, it takes nonexempt use to put it back on the tax rolls. If property is put to a charitable exempt use and is then left idle, the exemption continues until a nonexempt use actually commences. *See Mid-State Baptist Hospital, Inc. vs. City of Nashville,* 211 Tenn. 599, 607, 366 S.W.2d 769, 773 (1963). The proper formula for pro ration would be to deny the exemption only for the number of days out of the year in which a nonexempt activity occurred.

This Court is unable to modify the Commission's decision accordingly because it is not clear from the record how many days of each year in question were days when a nonexempt use took place. The testimony refers to the percentage of performances by charitable organizations, not percentage of use by charitable versus noncharitable users. Therefore, this case is remanded to the State Board of

Equalization for a reconsideration of the pro rata exemption for the auditorium and associated areas.

The Foundation claims that the effective date of exemption should be January 1, 1977, because the building was acquired by it during 1976. The Commission found that actual use of the offices began in March 1979, for an effective date of exemption of January 1, 1980, and actual use of the auditorium began in February 1977, for an effective date of exemption of January 1, 1978.

Because holding the building for redevelopment and restoration is the charitable use, this Court reverses the Commission's decision. The effective date of exemption for the offices and the auditorium is January 1, 1977.

The State Board has appealed and presented the following issues for review:

1. Whether the Chancellor erred in holding that the respondent's pro ration formula for exempting 50% of the Orpheum Theatre was incorrect?

2. Whether the Chancellor erred in granting an effective date of exemption for the Orpheum Theatre and petitioner's offices of January 1, 1977?

In April, 1977, appellee filed with the Shelby County Tax Assessor an application for exemption. This application was apparently mislaid. On January 16, 1979, appellee was permitted to file another application for exemption. The hearing examiner of the State Board of Equalization denied the application except as to the office space of appellee. On Appeal, the administrative law judge affirmed. On further appeal, the Assessment Appeals Commission approved exemption of 50% of the auditorium effective January 1, 1978, and the offices and office equipment effective January 1, 1980. The portions of the building occupied by business enterprises were denied exemption. On further appeal, the foregoing decision was affirmed by the State Board of Equalization. A petition for judicial review resulted in the decision of the Chancellor from which the present appeal is prosecuted.

The Orpheum Theatre was purchased by appellee on November 1, 1976, for $275,-000.00 for the following purpose:

Restore the structure and develop its usage with the intent of making it attractive for public or private investment, and a stimulant for other development activities in the area immediately surrounding the Orpheum, including the Beale Street Landing Development and the development of Beale Street under public auspices on the east side of Main Street.

Appellant established and followed the practice of renting the auditorium to non-profit groups for $500 per performance and to profit making groups for $500 plus 10% of gross receipts for each performance. During 1977, the auditorium was used for sixteen (16) non-profit performances and fifteen (15) for-profit performances. During 1978, there were twenty-five (25) non-profit performances and twenty-seven (27) for-profit performances. During 1979, there were thirty-four (34) non-profit performances and twenty-eight (28) for-profit performances.

During 1980, the auditorium was used for performances of a for-profit play from July 29 through August 9 which produced a revenue of $55,000 from 10% of gross receipts.

■ Appellee insists first that the exemption should be 100% instead of 50% because it is organized for a charitable purpose. This, of course, is not sufficient to entitle appellee to exemption, for exempt property must be "held and used for purposes purely religious, charitable, scientific, literary or educational." Article II, Section 28, Constitution of Tennessee.

The property of a religious, charitable, scientific or educational institution is exempt only if occupied and used by it purely and exclusively for carrying out one or more of the purposes for which the institution exists or occupied and used by another exempt institution purely and exclusively for one or more of the purposes for which the other exempt institution was created or exists. In the latter event, no more than one dollar per year rental may be paid by

the latter institution to the former. T.C.A. § 67–513(a).

 Appellee insists that its ownership and use of the Orpheum Theatre is entirely devoted to the charitable purpose "to promote urban development." This argument is logical, but it does not comport with the constitutional and statutory scheme set out above. It ignores the strict requirement of the statute that any rental of the property be to an exempt institution at an annual rental of no more than one dollar. It also overlooks the fact that "urban development" can include many types of activities which are commercial and cannot be exempt under the statute. The promotion and encouragement of urban redevelopment may be an exempt activity, but demolition, remodeling and carrying on commercial activity on the redeveloped property is not an exempt activity.

 This Court simply cannot accept the premise that a private, not-for-profit corporation can buy an historic building and offer it for rent for commercial use at a price in competition with owners of other buildings without subjecting the property to taxation.

 Appellee next argues that it is performing a function which the municipal government would have performed if financing had been available. The exemption of government owned property is not comparable to the exemption granted charities. The government is entitled to exemption because it is the government, not because the use is a charitable use. The government may use its property for a charitable or non-charitable use, but it remains exempt. The exemption for charitable use by a charity is narrowly defined and depends upon the use.

Appellee cites *Greek Theater Association v. County of Los Angeles,* Cal.App.1978, 78 Cal.App.3d 768, 142 Cal.Rptr. 919; however, in that case, the Greek Theater assumed full responsibility for producing the various performances. The Greek Theater did not collect a rent from the organizations using the Theater. On the contrary, the Greek

Theater paid performers or companies of performers to procure the desired entertainment, and Greek Theater collected the price of admission from the patrons. Even if the cited authority were otherwise in point and the California statute the same and even if this Court were disposed to follow the California holding, the distinction just pointed out precludes its application to the present case.

Appellee next argues that it is at least entitled to partial exemption under the standard adopted by the Chancery Court.

The Chancellor found:

On days when no performances are taking place, the Foundation is still purely and exclusively occupying and using the Theatre for its charitable purpose of redeveloping and restoring this historic structure in a blighted area.

 Appellee seeks to distinguish the present case from *Book Agents of Methodist Episcopal Church South v. State Board of Equalization,* Tenn.1974, 513 S.W.2d 514, in which idle time of printing presses was not counted as charitable use. A sensible and rational interpretation of the statute must be made. It was not intended that exempt property be used for the charitable purpose sixty seconds of every minute of every hour, day and night during the year. The word "use" admits of the occurrence of idle time between uses, but it does not admit the interruption of charitable use by non-charitable use without suitable pro-ration. It is not reasonable to hold that all idle time is attributable to the charitable use. Nor is it reasonable to attribute all idle time to non-charitable use. If one half of actual use is charitable and one half of actual use is non-charitable, then one half of idle time is creditable to charitable use and one half of idle time is chargeable to non-charitable use. Stated in other terms, one half of the time the auditorium is unused, it is waiting to be used for charitable purpose, and this waiting period is charitable too; and one half of the time the auditorium is unused, it is waiting to be used for a non-charitable purpose, so that this

part of the waiting time is for non-charitable purposes.

So long as the auditorium is used in part by for-profit organizations, appellee is not entitled to claim that all idle time is charitable, exempt time.

■ Thus, this Court agrees with the Board that pro-ration of exemption should be in proportion to use time, that is, comparing time of actual use for charitable and non-charitable purposes without consideration of idle time. Since the appellee is not using the property purely and exclusively for its declared purposes, the mere "holding" of the building is not a charitable purpose except to the extent that it is a "holding" for expected charitable use.

■ Appellee next contends that the Chancellor correctly determined the effective dates of exemption. It is insisted that the mere acquisition of ownership for the intended purpose was sufficient to trigger the right to exemption. This Court does not agree. Neither the Constitution nor the statute allows the ownership of unused property by a tax exempt organization to confer exemption upon the property. It is the *use* and *not* the non-use which confers exemption. *Metropolitan Government of Nashville v. State Board of Equalization,* Tenn.1976, 543 S.W.2d 587.

■ In the present case, the property was acquired in November, 1976. Actual use of office space by the appellee did not begin until March, 1979. Therefore, exemption of office space could not begin until the first day of the next tax year, i.e., January 1, 1980. The use of the auditorium began February, 1977. Therefore, the auditorium, or any part thereof, could not be exempt until the first day of the next tax year, i.e., January 1, 1978.

This Court therefore concurs in the findings and conclusions of the defendant Board that the office and contents should be exempt beginning January 1, 1980, and 50% of the theatre should be exempt beginning January 1, 1978.

The decree of the Chancellor is reversed. The order of the Board is affirmed. The costs of this appeal are taxed against plaintiff. The cause is remanded for further proceedings.

Reversed and remanded.

LEWIS and CANTRELL, JJ., concur.