**KOPSOMBUT–MYINT BUDDHIST CEN-TER, a Joint Venture and the Buddhist Temple, a not-for-profit Tennessee Corporation, Petitioners/Appellants,**

v.

**STATE BOARD OF EQUALIZATION for the State of Tennessee and the Metropolitan Government of Nashville, Davidson County, Tennessee, Respondents/Appellees.**

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Oct. 29, 1986.

Permission to Appeal Denied by
Supreme Court April 6, 1987.

Joseph H. Johnston, Nashville, for petitioners/appellants.

W.J. Michael Cody, William P. Sizer, Nashville, for respondents/appellees.

Nashville Association of Rabbis, Priests and Ministers, Mary V. Anderson, Nashville, amicus curiae.

## OPINION

KOCH, Judge.

This appeal stems from the efforts of a group of Asian immigrants to obtain a property tax exemption for their newly organized Buddhist temple and ecumenical center for Buddhist studies. The Davidson County tax assessor denied an exemption for 1982 and granted only a partial exemption for 1983. The property owners appealed those decisions to the Assessment Appeals Commission which reached the same result as the local assessor. The assessments became final when the State Board of Equalization declined to review the Commission's decision. The property owners filed a petition for review, and the Chancery Court for Davidson County likewise affirmed the Commission's decision.

The property owners have perfected this appeal. They challenge not only the substance of the taxing authorities' decisions but also the procedures used to reach them. We have determined that the adjudicatory procedures employed by the taxing authorities were proper. However, we vacate the Commission's decisions denying the requested exemptions because they are arbitrary and unsupported by substantial and material evidence.

## I.

### The Formation of the Temple

An increasing number of immigrants and refugees from Southeast Asia have made their home in Nashville in recent years.[1] Most of these immigrants are Buddhist. They did not have a place to practice their religion until 1981 when a group of Burmese and Thai immigrants decided to establish a temple to serve the needs of the Buddhists living in the Nashville area.

In August, 1981, the temple organizers learned that an old church on Treutland Street in North Nashville was for sale. The church itself had been built by the North Nashville Baptist Church in 1892. A three story auxiliary building was added in 1964 but the upper two floors were never completed. The North Nashville Baptist Church sold this property to the House of Prayer and Praise, Inc. when it moved to a new location and changed its name to the Broadmoor Baptist Church. This property has always been exempted from ad valorem taxation because it has been owned and used continuously by religious institutions.

The temple organizers discovered that they could not borrow money in the name of the temple to finance the purchase of this property because the temple had no established credit of its own. However, both the Broadmoor Baptist Church and the House of Prayer and Praise, Inc. agreed that the transaction could proceed if two of the organizing group's members with established credit became personally involved in the transaction.

Mr. Win Myint, and Mr. Prayote Kopsombut agreed to purchase the church property on behalf of the temple. Mr. Myint, a naturalized American from Burma who has resided in Nashville since 1965, and Mr. Kopsombut, a resident alien from Thailand who has resided in Nashville since 1978, were members of the organizing group. While their initial understanding with the other temple organizers was not reduced to writing, it is undisputed that Mr. Myint and Mr. Kopsombut agreed to form a joint venture solely for the purpose of acquiring the Treutland Street property and then conveying it to the temple once it

---

1. A refugee settlement agency has estimated that there are approximately 2,700 Laotian, Vietnam-ese, and Cambodian refugees in Nashville.

was organized as a not-for-profit corporation. They also agreed that they would receive no profits from this transaction.

Myint and Kopsombut formed the Kopsombut-Myint Buddhist Center as partners and joint venturers. On December 16, 1981, the Kopsombut-Myint Buddhist Center acquired the Treutland Street property from the House of Prayer and Praise, Inc. for $86,500. The joint venture assumed the House of Prayer and Praise, Inc.'s first mortgage held by the Broadmoor Baptist Church and gave a second mortgage and cash to the House of Prayer and Praise, Inc.

Religious activities commenced as soon as the sale was completed with the assistance of visiting monks from San Francisco and Laos. During 1982 and 1983, the temple obtained monks from Nepal, Burma, Sri Lanka, and Thailand. In May, 1982, the temple celebrated "Vesakhapuja" or Buddha's Day, and in December, 1982 the only two "Baddha Simas" [2] in the Southeastern United States were consecrated.

On March 10, 1982 the Davidson County tax assessor sent the Kopsombut-Myint Buddhist Center an application for a tax exemption for the Treutland Street property. In addition to completing the application form, the assessor requested "a copy of your Charter of Incorporation, a copy of your By-Laws, and a copy of your latest financial statement which should disclose therein the source from which you receive all moneys and how same is disbursed." The Kopsombut-Myint Buddhist Center had none of these documents because its formation was based upon the oral agreements of Mr. Myint, Mr. Kopsombut, and the remaining temple organizers. Thus, it did not return the application for an exemption until November 15, 1982. In the months following the tax assessor's letter, the temple organizers began to take the steps necessary to establish the temple as a not-for-profit corporation and to vest the title to the temple property in the corporation.

The Buddhist Temple, Inc. filed its articles of incorporation as a not-for-profit corporation on March 18, 1982. Mr. Myint and Mr. Kopsombut were among the original incorporators and were elected to the corporation's first board of directors. Mr. Myint was designated as the corporation's agent for service of process.

The corporation finally retained counsel in July, 1982. On November 12, 1982, Mr. Myint and Mr. Kopsombut executed a written agreement embodying their original agreements when they formed the joint venture to enable the temple organizers to acquire the Treutland Street property. This agreement provided, in part:

WHEREAS, Kopsombut and Myint desire to promote the establishment of an Ecumenical Buddhist Temple and an International Buddhist Study Center in Nashville, Tennessee, for the benefit of themselves and others interested in Buddhism; and

WHEREAS, Kopsombut and Myint formed a joint venture by the name of Kopsombut-Myint Buddhist Center for the sole purpose of carrying out this project; and

WHEREAS, on December 16, 1981, Kopsombut and Myint purchased certain real property at 230 Treutland Street, Nashville, Tennessee, in the name of the Kopsombut-Myint Buddhist Center, a joint venture, for the sole purpose of holding it and subsequently conveying it to a non-profit corporation (hereinafter "The Buddhist Temple") which was to be later established to own and operate the physical facilities of said temple and study center; and

WHEREAS, Kopsombut and Myint do not desire, and have never desired, to obtain any personal profit for themselves or the joint venture in pursuing their goal of establishing the aforesaid temple and study center; and

WHEREAS, Kopsombut and Myint desire to have a written agreement that accurately describes the nature of their joint venture and the purpose for which it was created; and

---

2. A "Baddha Sima" is a small, consecrated area within which certain ceremonial functions such as the ordination of Buddhist monks must take place.

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the Joint Venturers do agree as follows:

1. *Purpose and name.* In December, 1981, the Joint Venturers formed this joint venture to acquire and hold real property for the purpose of providing physical facilities for the establishment of a temple and study center. The name of this joint venture is "Kopsombut-Myint Buddhist Center."

2. *Real Property.* The Joint Venturers have purchased real property known as 230 Treutland Street, Nashville, Davidson County, Tennessee more fully described as Exhibit A attached hereto and incorporated by references herein (hereinafter "Property").

\* \* \* \* \* \*

11. *Profit or Loss.* Any losses attributable to this joint venture shall be divided equally between the parties ... Under no circumstances shall Kopsombut or Myint, individually, or as Joint Venturers, receive any profit from the joint venture or the sale of the Property.

12. *Binding Effect.* This Agreement contains the entire understanding of the parties and may not be changed or modified except by written agreement of the parties. This agreement may not be assignable by either party.

On the same day they executed this agreement, Mr. Myint and Mr. Kopsombut also signed the application for a tax exemption the assessor had mailed to them eight months earlier.

The Kopsombut-Myint Buddhist Center conveyed the Treutland Street property to The Buddhist Temple, Inc. on December 31, 1982. This transaction was for nominal consideration, and The Buddhist Temple, Inc. expressly agreed to assume the mortgages held by the Broadmoor Baptist Church and the House of Prayer and Praise, Inc.

---

3. The Tennessee Supreme Court determined that there was no yearly deadline for filing an application for a tax exemption. *Methodist Hos-*

## II.

### *The Decisions of the Taxing Authorities*

Davidson County's tax assessor denied Kopsombut-Myint Buddhist Center's request for a 1982 property tax exemption. Its decision was based upon two findings: (1) the Kopsombut-Myint Buddhist Center was not a religious institution and (2) the application for exemption was not filed prior to the deadline for filing applications for 1982 tax exemptions. Later, on March 23, 1983, the tax assessor granted a partial exemption for 1983 because The Buddhist Temple, Inc. had failed to demonstrate that it was actually using the top two floors of the church's auxiliary building.

The Buddhist Temple, Inc. appealed both of these decisions to the State Board of Equalization. An administrative judge conducted a hearing on August 16, 1983. In its August 30, 1983 proposed decision, the administrative judge concluded that the application for the 1982 exemption should be denied because it was received after the filing deadline had passed. It also concluded that the partial exemption for 1983 should be affirmed because The Buddhist Temple, Inc. had failed to demonstrate that it was using all of the auxiliary building.

The Buddhist Temple, Inc. took exception to this proposed decision. The Assessment Appeals Commission heard this matter on March 27, 1984 and rendered its decision on May 21, 1984. The Commission determined that the application for a 1982 tax exemption could not be denied because it was not timely filed.[3] However, the Commission concluded that the application for the 1982 tax exemption should be denied because the Kopsombut-Myint Buddhist Center was not a religious institution for the purposes of Tenn.Code Ann. § 67–5–212. It also concluded that The Buddhist Temple, Inc. should receive only a 75% exemption in 1983 because it was not using two floors of the auxiliary building adjacent to the church. The State Board of Equalization declined to review this decision. Accord-

*pitals of Memphis v. Assessment Appeals Commission,* 669 S.W.2d 305, 308 (Tenn.1984).

ingly, it became the final assessment for this property for 1982 and 1983.

The Buddhist Temple, Inc. filed a petition for review in the Chancery Court for Davidson County. The trial court determined in its June 19, 1985 memorandum opinion that the Assessment Appeals Commission's decision should be affirmed. However, the trial court reached the conclusion that the application for the 1982 tax exemption should be denied for reasons different from those relied upon by the Commission. The trial court held:

> As to the first issue presented for review, the form of ownership chosen by Myint and Kopsombut was a joint venture. By definition, the joint venture was merely an association of Myint and Kopsombut under which each had an equal right of control. The formal agreement limiting their rights was not entered into until November 1982. Up until that time, either man could have used the subject property for his own profit or for the profit of the joint venture. The fact that they did not actually do so is irrelevant.
>
> T.C.A. § 67–5–212(a)(4) states that property is not exempt if the owner receives or is *legally entitled to receive* any pecuniary profit from the property. (Emphasis added). A joint venture clearly falls within this limitation. Therefore, Kopsombut-Myint was not an ownership qualified for tax exemption.

The trial court also affirmed the Commission's action with regard to the 1983 exemption based upon the same rationale used by the Commission.

### III.

#### The Choice of an Adjudicatory Proceeding

■ The property owners assert that the taxing authorities' construction of the term "religious institution" as it is used in Tenn. Code Ann. § 67–5–212(a)(1) was improper because the State Board of Equalization had not first used its rule-making authority to promulgate a definition of the term for property taxation purposes. We do not agree.

The State Board of Equalization has the authority, pursuant to Tenn.Code Ann. §§ 4–3–5103(1) and 67–1–305(a)(1) to promulgate rules and manuals to aid in the appraisal, classification, and assessment of property. While the Board could, if it wished to do so, define the term "religious institution" by promulgating a rule, it is not required to do so as a condition to exercising its responsibility pursuant to Tenn.Code Ann. § 4–3–5103(5) to hear and determine appeals concerning the exemption of property from taxation. The choice between using a rule-making proceeding and an adjudicatory proceeding is, in the first instance, within the agency's discretion. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974) and *SEC v. Chenery Corp.*, 332 U.S. 194, 201–202, 67 S.Ct. 1575, 1579–80, 91 L.Ed. 1995 (1947). See also 3 B. Mezines, J. Stein & J. Gruff, *Administrative Law* § 14.01, at 14–8 (1985); 1 C. Koch, *Administrative Law and Practice* § 2.14 (1985); and 2 K. Davis, *Administrative Law Treatise* § 7:25 (2d ed. 1979).

While an agency's decision to use an adjudicatory rather than a rule-making proceeding can be reviewed for abuse of discretion, *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 1771, 40 L.Ed.2d 134 (1974), these decisions are rarely reversed. When they are, the adjudicatory proceedings involve changes in well-established agency policy upon which there has been significant reliance. See *NLRB v. Niagara Machine and Tool Workers,* 746 F.2d 143, 151 (2d Cir.1984) and *Ka Fung Chan v. INS,* 634 F.2d 248, 257 (5th Cir.1981).

The circumstances of this case do not warrant this Court's interference with the use of an adjudicatory proceeding. The choice of the nature of the proceeding was made by the property owners not by the administrative agency. The property owners have not pointed to any existing agency policy upon which they relied. They have also failed to demonstrate how the agencies' construction of Tenn.Code Ann. § 67–5–212(a)(1) in this case is a marked departure from its prior practice. Without such

proof, we are not prepared to conclude that the taxing authorities' use of an adjudicatory procedure to attempt to fill in the void in this unsettled area of law was improper.

## IV.

### The Temple's Entitlement to an Exemption

Article II, Section 28 of the Tennessee Constitution provides that property held and used for purely religious purposes may be exempted from taxation. However, this provision is not self-executing, and thus it is the Legislature's prerogative to define the circumstances under which an exemption will be granted. *Mid-State Baptist Hospital, Inc. v. City of Nashville*, 211 Tenn. 599, 603, 366 S.W.2d 769, 771 (1963) and *Metropolitan Government of Nashville and Davidson County v. Nashville Pi Beta Phi House Corp.*, 56 Tenn.App. 330, 338, 407 S.W.2d 179, 183 (1966). The Legislature has exercised its prerogative by enacting Tenn.Code Ann. § 67–5–212(a)(1) which provides, in pertinent part, that:

> There shall be exempt from property taxation the real and personal property, or any part thereof, owned by any religious, charitable, scientific or educational institution which is occupied and used by such institution or its officers purely and exclusively for carrying out thereon one (1) or more of the purposes for which said institution was created or exists.

There is no dispute that the Treutland Street Property, to the extent it can be used, has been used for exclusively religious purposes. The controlling question in this case is whether the Kopsombut-Myint Buddhist Center was a religious institution in 1982.

There has been a great deal of litigation construing Tenn.Code Ann. § 67–5–212(a)(1)'s requirement that property must be owned and used for religious purposes in order to be exempt. However, there has been little litigation concerning the nature of the entity that will qualify as a religious institution entitled to claim a tax exemption. Thus, our analysis is governed by general property taxation principles.

■ Courts as a general rule recognize the presumption against exempting property from taxation. *United Canners, Inc. v. King*, 696 S.W.2d 525, 527 (Tenn.1985). However, this rule does not apply as strictly in cases involving claimed Tenn.Code Ann. § 67–5–212 exemptions. *Mid-State Baptist Hospital v. City of Nashville*, 211 Tenn. 599, 606, 366 S.W.2d 769, 772–73 (1963) and *State v. Fisk University*, 87 Tenn. 233, 241, 10 S.W. 284, 286–87 (1889). The Tennessee Supreme Court has noted that

> in this State, contrary to most other states, tax exemptions in favor of religious, scientific, literary and educational institutions are liberally construed rather than strictly. It is further pointed out that the opinion in *City of Nashville v. State Board of Equalization*, [210 Tenn. 587, 360 S.W.2d 458 (1962)] supra, in nowise dilutes the rule of liberal interpretation. *George Peabody College for Teachers v. State Board of Equalization*, 219 Tenn. 123, 128–29, 407 S.W.2d 443, 445 (1966).

The taxing authorities should have reviewed the Kopsombut-Myint Buddhist Center's application for a property tax exemption using the Tennessee Supreme Court's relaxed standard for religious institutions. It did not do so. We find that this was error in light of the undisputed evidence that all inhabitable areas of the property have been used for religious purposes since December, 1981 when the Center acquired the property.

### A.

### The Kopsombut-Myint Buddhist Center's 1982 Exemption

The Assessment Appeals Commission found that the Kopsombut-Myint Buddhist Center had not met the requirements of Tenn.Code Ann. § 67–5–212(a)(1) for two reasons. First, the Commission stated:

> The restriction in the statute precludes ownership by an individual or individuals and by implication suggests ownership which has a foundation by law, whether

the mode of its operation be by way of legislative enactment, a corporation or a trust, but imposing always an irrevocable use of the property for exempt purposes. Second, the Commission held:

The property was acquired by Myint and Kopsombut in December 1981; the joint venture was not formalized until almost a year later on November 12, 1982 at which time a written agreement was drawn that went into substantial detail about the duties of Myint and Kopsombut, the events of default, the transfer of the property and profit or loss. It appears that the conditions placed on the two parties by the agreement in November *may* have had the effect of forming a trust whereas Myint and Kopsombut acted as trustees for the Buddhist Center. Until this formulation of the restrictions set out in the agreement, the joint venture was an association of two men who had equal right of control over the property. The fact that the individuals did not exercise this right is of no consequence nor is the altruistic intentions of the joint venturers. Either party or both who wished to transfer his interest in the property could have done so with impunity.

These findings indicate that the Commission denied Kopsombut-Myint Buddhist Center's 1982 exemption simply because the joint venture agreement had not been reduced to writing prior to the beginning of 1982. We infer that the Commission reasoned that until Myint and Kopsombut executed this agreement there was no binding, irrevocable commitment to hold and use the property for exempt purposes. We disagree. In fact, all the evidence is to the contrary.

■ A valid trust need not be in writing. It can be created orally unless the language of the written conveyance excludes the existence of a trust. *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn.1979); *Linder v. Little*, 490 S.W.2d 717, 723 (Tenn.Ct.App.1972); and *Adrian v. Brown*, 29 Tenn.App. 236, 243, 196 S.W.2d 118, 121 (1946). However, when a party seeks to establish an oral trust, it must do so by

greater than a preponderance of the evidence. *Sanderson v. Milligan*, 585 S.W.2d 573, 574 (Tenn.1979); *Hunt v. Hunt*, 169 Tenn. 1, 9, 80 S.W.2d 666, 669 (1935); and *Browder v. Hite*, 602 S.W.2d 489, 493 (Tenn.Ct.App.1980).

■ The existence of a trust requires proof of three elements: (1) a trustee who holds trust property and who is subject to the equitable duties to deal with it for the benefit of another, (2) a beneficiary to whom the trustee owes the equitable duties to deal with the trust property for his benefit, and (3) identifiable trust property. See G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 1, at 6 (rev. 2d ed. 1984) and Restatement (Second) of Trusts § 2 comment h (1957). We find that the Kopsombut-Myint Buddhist Center has proved the existence of each of these elements by clear and convincing evidence.

■ Both the November, 1982 agreement embodying the parties' commitments when the property was purchased in December, 1981 and Mr. Myint's uncontradicted testimony show that Kopsombut and Myint intended to create a joint venture that would acquire the Treutland Street property and hold it in trust for Nashville's Buddhist Community. They agreed to restrict their interest in the property by agreeing to receive no profits of any sort and to convey the property only to The Buddhist Temple when it was incorporated. These oral agreements are sufficient to establish an enforceable trust in the Treutland Street property in favor of the temple which came into effect when the Kopsombut-Myint Buddhist Center purchased the property from the House of Prayer and Praise, Inc.

■ The trial court's reason for denying the 1982 exemption differed from the Assessment Appeals Commission. It relied upon the portion of Tenn.Code Ann. § 67–5–212(a)(4) that states

But the property of such institution shall not be exempt if the owner, or any stockholder, officer, member or employee of such institution shall receive or may be lawfully entitled to receive any pecu-

niary profit from the operations of that property in competition with like property owned by others which is not exempt.

The trial court concluded that Myint and Kopsombut could have received profits from this transaction merely because they formed a joint venture to acquire the Treutland Street property. We disagree with this conclusion. A joint venture is inherently neither a for-profit entity nor a not-for-profit entity. Its nature depends upon the nature of the persons forming it and the purposes for which it was formed.

We should look to the substance of an arrangement rather than its form when we are construing Tenn.Code Ann. § 67–5–212. See *National Music Camp v. Green Lake Township,* 76 Mich.App. 608, 257 N.W.2d 188, 191 (1977). We have already determined that the Kopsombut-Myint Buddhist Center was holding the Treutland Street property in trust for The Buddhist Temple pursuant to an oral trust agreement. It is the character of the beneficiary of the trust, not the trustee, that determines the availability of an exemption. *National Bank of Burlington v. Huneke,* 250 Iowa 1030, 98 N.W.2d 7, 11 (1959).

There is no question that the beneficiary of the trust, The Buddhist Temple, is a religious institution. As the owner of the equitable interest in the property, The Buddhist Temple can be deemed to be the "owner" of the property for the purpose of obtaining a tax exemption. See *Hahn v. County of Walworth,* 14 Wis.2d 147, 109 N.W.2d 653, 656 (1961). See also 71 Am. Jur.2d *State and Local Taxation* § 366 (1973); Annot., 94 A.L.R.2d 636 § 3 (1964); and 84 C.J.S. *Taxation* § 231 (1954). It is also undisputed that Myint and Kopsombut, as trustees, agreed that they would hold the property only for the benefit of the temple. Therefore, the trial court's conclusion that Kopsombut and Myint could profit from this transaction is not supported by the evidence.

**4.** This is a correct statement of the property owner's burden when an exempt institution acquires real property that had been non-exempt. *Metropolitan Government of Nashville and Davidson County v. State Board of Equalization,*

## B.

### *The Partial Exemption for the 1983 Tax Year*

The upper two floors of the auxiliary building on the Treutland Street property were not fit for human habitation when the Kopsombut-Myint Buddhist Center acquired the property in December, 1981. These floors have remained uncompleted since the building was constructed in 1964 and had been considered exempt from taxation while the property was owned by the North Nashville Baptist Church and the House of Prayer and Praise, Inc. They remained unsuitable after the Kopsombut-Myint Buddhist Center conveyed the property to The Buddhist Temple because the temple lacked the funds to repair them.

The taxing authorities determined that these floors were taxable notwithstanding their earlier exemption. They reasoned that the property lost its tax exempt status when the Kopsombut-Myint Buddhist Center acquired it in December, 1981 because the Center was not a religious institution pursuant to Tenn.Code Ann. § 67–5–212. Thus, the property was not tax exempt when The Buddhist Temple acquired it in December, 1982 and could not be considered tax exempt until The Buddhist Temple demonstrated that these two floors were actually being used exclusively for exempt purposes.[4] The Buddhist Temple conceded that these two floors have not been used, and so the taxing authorities concluded that they were taxable because they were not being actually used for exempt purposes.

It is evident that the determination that these two floors are taxable hinges upon the finding that the Treutland Street property became nonexempt when the Kopsombut-Myint Buddhist Center acquired it. If this finding is erroneous, then the tax exempt status of the property must be reexamined.

543 S.W.2d 587, 588 (Tenn.1976) and *Memphis Development Foundation v. State Board of Equalization,* 653 S.W.2d 266, 271 (Tenn.Ct.App. 1983).

This Court has held that once property has been exempted from taxation, it takes a showing of actual use for a nonexempt purpose to remove this exemption. Judge Todd held:

> Once property has been put to a charitable use sufficient to take the property off the tax rolls, it takes nonexempt use to put it back on the tax rolls. If property is put to a charitable exempt use and is then left idle, the exemption continues until a nonexempt use actually commences. *Memphis Development Foundation v. State Board of Equalization,* 653 S.W.2d 266, 268 (Tenn.Ct.App.1983).

There is no dispute that the Treutland Street property had been exempt from 1892 when the North Nashville Baptist Church acquired it until December, 1981 when the Kopsombut-Myint Buddhist Center acquired it. If the Center was deemed to be a religious institution and if its use of the property in 1982 was deemed to be for exclusively exempt purposes, then all the property would remain exempt until the taxing authorities demonstrated that it was being used for nonexempt purposes. Without this showing, the property would remain off the tax rolls.

We have already determined that the record does not support the taxing authorities' decisions that the Kopsombut-Myint Buddhist Center was not a religious institution and that the Treutland Street property was not being held and used exclusively for religious purposes. Since we have vacated these decisions, it follows that the decision to grant The Buddhist Temple only a partial exemption in 1983 must also be vacated.

## V.

For the reasons stated herein, the judgment of the trial court affirming the State Board of Equalization's assessment of this property is vacated. The case is remanded to the trial court to determine, in accordance with this opinion, whether this property was entitled to a Tenn.Code Ann. § 67–5–212 exemption in 1982 and whether The Buddhist Temple was entitled to a total exemption in 1983.

The costs of this appeal are taxed to the State Board of Equalization.

CANTRELL, J., concurs.

TODD, P.J. (M.S.), files a separate concurring opinion.

TODD, Presiding Judge, Middle Section, concurring.

I completely concur in the principal opinion, but respectfully submit this historical footnote.

Historically, in 1892, the property was located in Edgefield, which was not a part of Nashville, and the particular community was known as North Edgefield. The name of the Church was North Edgefield Baptist Church. Although the area is now a part of Nashville, it is still known as North Edgefield, or Northeast Nashville.

North Nashville is some distance to the west and across the Cumberland River.

The only evidence in this record concerning the name and location of the Baptist Church which formerly owned the subject property is the testimony of a recent immigrant whose information was perforce obtained from others with probable difficulty in understanding.

It is entirely proper for this Court to use the only identification found in the record. Since it is immaterial to the result, it is hoped that the above explanation will preserve the historical background.