# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 30, 2003 Session

## FIRST PRESBYTERIAN CHURCH OF CHATTANOOGA v. TENNESSEE BOARD OF EQUALIZATION, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 01-0208     Howell N. Peoples, Chancellor**

### FILED AUGUST 15, 2003

### No. E2003-00128-COA-R3-CV

Ms. Madeline D. Apple bequeathed her house to First Presbyterian Church of Chattanooga ("the Church") to be used for the temporary housing and convenience of the Church's missionaries. The Church filed a formal application with the Board of Equalization requesting the house be exempted from property taxation because it was used purely and exclusively for carrying out the Church's missionary work. The request for exemption was denied, a decision later upheld by an Administrative Law Judge and then by the Assessment Appeals Commission. The Church appealed the final decision of the Assessment Appeals Commission to the Hamilton County Chancery Court ("Trial Court"). After a hearing, the Trial Court concluded the house was not used purely and exclusively for religious purposes and denied an exemption. The Church appeals, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

J.W. Dietzen, Chattanooga, Tennessee, for the Appellant First Presbyterian Church of Chattanooga.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Ann Louise Vix, Senior Counsel, Nashville, Tennessee, for the Appellees Tennessee State Board of Equalization and Tennessee Assessment Appeals Commission.

Mary Neill Southerland, Chattanooga, Tennessee, for the Appellee Bill Bennett, Hamilton County Assessor of Property.

## OPINION

## Background

Ms. Madeline D. Apple owned a house in Chattanooga. In her will, Ms. Apple bequeathed this property to the Church to be used "for the temporary housing and convenience of the missionaries of said Church." After Ms. Apple passed away and an Executor's Deed was delivered to the Church, the Church requested the Assessor of Property for Hamilton County to exempt this property from taxation. Specifically, the Church claimed this property was exempt because it was used purely and exclusively for carrying out thereupon at least one of the purposes for which the Church existed, i.e., its missionary work. A formal application to exempt the property from taxation was filed with the Board of Equalization ("Board") on April 30, 1999. On May 17, 1999, the Board's Exemption Designee denied the exemption.

The Church appealed the decision of the Exemption Designee to an Administrative Law Judge ("ALJ"), who conducted a hearing and heard testimony from Reverend Lea Clower as well as Roger Thomas, the Church's Director of World Missions. The ALJ subsequently issued Findings of Fact and Conclusions of Law. From a factual standpoint, it was undisputed that during the over two-year period the Church was in possession of the house, it was used by overseas missionaries who returned to the United States on home assignment, with the exception of a two-month period when a former pastor for the Church was permitted to live in the house after he returned to the Chattanooga area and while he attempted to obtain permanent housing. Occupants of the house are not charged rent, but they are required to pay for utilities. It also was undisputed that missionaries on home assignment are required to report to the Church's World Missions Committee, attend an annual World Missions Conference, as well as participate in Sunday School and Bible study.

After discussing the above facts, the ALJ noted that a religious or other qualifying institution is eligible for exemption only if the property is put to a use which is "'directly incidental to or an integral part of' (or 'reasonably necessary' to the accomplishment of) an exempt purpose of the institution. *Methodist Hospitals of Memphis v. Assessment Appeals Commission*, 669 S.W.2d 305 at 307 (Tenn. 1984)." The ALJ then stated as follows:

> With the notable exception of parsonages, property of a religious institution that is used principally as a residence has generally not been approved for exemption – regardless of whether the owner receives income from such property.[1] Thus, as counsel for the Church has acknowledged, the Assessment Appeals Commission … has historically declined to exempt church-owned residences for missionaries on furlough. For example, in the *Appeal of Riverview*

---

[1] It is noteworthy that Tenn. Code Ann. section 67-5-212(a)(1) specifically precludes a church from obtaining exemption of more than one parsonage. (footnote in original)

*Independent Baptist Church* (Rutherford County, decided December 14, 1987), where the appellant sought exemption of a "prophet's quarters" within an activities center, the Commission upheld the following rationale for denial:

> …[T]he residents of this room have no duties that require that they be furnished a residence. Furnishing this residence cannot be said to be "reasonably necessary" to accomplishment of the appellant's exempt purposes and in fact more closely resembles compensation or a living allowance to the occupants of the room.

*Id.* at p. 3.

> Similarly, the evidence of record in this proceeding indicates that the subject property was intended primarily for the benefit of the missionaries who actually use it. In fact, as previously mentioned, Ms. Apple devised the property to the Church expressly for the "convenience" of such persons. While recognizing the depth of the Church's commitment to its missionary program, the administrative judge cannot legitimately infer that a missionary's temporary occupancy of this house – rather than a commercially-available home or apartment in the vicinity – would significantly enhance his or her overall contribution to that program.

The ALJ then upheld the decision of the Exemption Designee and concluded the property was not exempt from taxation under applicable law.

The Church appealed the ALJ's decision to the Assessment Appeals Commission ("Commission"), and another hearing was conducted. The Church stipulated to many of the ALJ's factual conclusions and also called Reverend Clower to testify to the very significant role missionary work occupies in the duties of the Church, a fact which is undisputed for purposes of this appeal. Roger Thomas ("Mr. Thomas") also testified. As previously noted, Mr. Thomas is the Director of World Missions at First Presbyterian Church in Chattanooga. Mr. Thomas testified the Church's world missionary work for fiscal year 2000 accounted for 37.5% of the Church's annual budget and was used to support 100 missionary families. According to Mr. Thomas, due to modern advances such as air travel, missionaries now are able to return home for shorter periods of time. A missionary returning to the United States is more likely to stay three to six months, whereas in the past they would have stayed for one or two years. In some cases, a missionary returning to the United States may be able to find suitable housing if they are staying for a sufficiently lengthy period of time. However, for those missionaries returning for a shorter period of time, it simply is not practical to rent a house and take the necessary steps to set up a household, only to have to dispose of everything

when they return overseas in a few months. Prior to the Church's obtaining the house at issue, its missionaries returning to the United States were responsible for finding their own place to stay. Mr. Thomas admitted this did not "shut down" the missionary program of the Church.

Mr. Thomas testified that when missionaries return to the United States, they are on "home ministry assignment" and are expected to visit their supporting church and give reports. If applicable, they undergo retraining or recertification in order to keep medical or teaching certificates and the like current. They also undertake recruiting work for the mission and raise funds. When returning to the United States, missionaries typically bring very few items with them, usually just clothing or books. They do not bring household items.

According to Mr. Thomas, the World Missions Committee established a policy that the house is available on a first come, first served basis as follows: first, to missionaries who are financially supported by and who are members of First Presbyterian Church; second, to missionaries who are financially supported by but not members of the Church; third, to retired missionaries; and fourth, to temporarily house members of the Church ministry staff who have such a need, such as when a house is being remodeled. Mr. Thomas testified the Church has no intention of classifying the house as a permanent residence for one of its missionaries.

Several months after the hearing was completed, the Commission issued its Final Decision and Order, at which time the Commission noted that the only issue to be decided was whether the Church's use of the property, i.e, temporary housing for missionaries on home assignment, constituted an exempt use. The Commission concluded that it did not, stating:

> [A substantial amount of] the church's roughly two million dollar budget is devoted to its mission program. The missionaries are financially supported by the church and the church provides housing when they temporarily return to the United States. Missionaries in this status are not idle, however. They are considered to be on "home missionary assignment" and may visit local churches that have supported them, receive retraining, recruit other missionaries, or raise contributions for the missionary program. They have occupied the subject property for periods ranging from ten days to eleven months.

> [The exemption was originally denied] on the basis of our prior decisions … which involved temporary housing for missionaries. The rationale of these decisions is that the housing primarily meets the needs of the missionaries or is a convenience to them, taking the place of a housing allowance, rather than being reasonably necessary to the evangelical effort of which the missionaries are a part. [The Church argues] that the Commission should decline to abide by these precedents and should instead grant

exemption in deference to the liberal construction generally given in Tennessee in the case of religious, charitable, and related exemptions.

The rule of liberal construction does not permit us to ignore the statutory exemption requirements and the circumstances of property use. Housing for an employee may indirectly serve the employer's interests by accommodating the living needs of the employee and enabling the employee to productively serve the employer, but the housing clearly and primarily benefits the employee and is a form of compensation.…

[D]ecisions of our courts (not merely our own precedents) require the housing to be exempt must be not only directly incidental to exempt purposes of the owner but reasonably necessary to fulfillment of the exempt purpose.… The functions of … the missionaries on home assignment as described in testimony in this case do not reasonably require they be housed on property of the church in the sense contemplated by these precedents. They do not fulfill a need for after hours security, supervision or access to other property of the church, nor are the lodgings used for any purpose of the church other than meeting the living needs of the missionaries.

The Church appealed the Commission's Final Decision and Order to the Trial Court and another hearing was conducted. Both Reverend Clower and Mr. Thomas testified consistently with their previous testimony. There was, however, additional testimony that since the last hearing, the Church permitted the house to be used by a missionary from Colorado whose son was being treated nearby in Atlanta for a medical condition. After reviewing the facts and applicable precedent, the Trial Court issued a memorandum opinion concluding the Church's allowing the house to be used: (1) by a former minister who was arranging for permanent housing after relocating to the Chattanooga area; and (2) by a missionary from Colorado whose son was receiving nearby medical treatment, while certainly commendable, did not qualify as use which was "purely and exclusively" for religious purposes. Accordingly, the Trial Court held the property was not exempt.

The Church appeals, claiming the Trial Court erred when it concluded the property was not exempt because it was not used purely and exclusively for carrying out thereupon one of the purposes for which the Church was created, i.e., its missionary work.

### Discussion

All parties to this appeal agree that and have proceeded as if the standard of review set forth in Tenn. R. App. P. 13(d) applies. We will, therefore, apply this standard and the factual findings of the Trial Court will be accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60

S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).[2]

The relevant statutory provision which allows certain real and personal property of qualifying institutions to be exempt from taxation provides as follows:

> There shall be exempt from property taxation the real and personal property, or any part thereof, owned by any religious, charitable, scientific or nonprofit educational institution which is occupied and used by such institution or its officers purely and exclusively for carrying out thereupon one (1) or more of the purposes for which the institution was created or exists, … and provided further, that no church shall be granted an exemption on more than one (1) parsonage, which shall include not more than three (3) acres of land except as hereinafter provided; and provided further, that no property shall be totally exempted, nor shall any portion thereof be pro rata exempted, unless such property or portion thereof is actually used purely and exclusively for religious, charitable, scientific or educational purposes.

Tenn. Code Ann. § 67-5-212(a)(1)(A).

In *Blackwood Brothers Evangelistic Association v. State Board of Equalization*, 614 S.W.2d 364 (Tenn. Ct. App. 1980), the plaintiff sought a property tax exemption for the home of Reverend Blackwood, the church's executive or chief minister. Reverend Blackwood was also a member of the Blackwood Brother's Quartet, a for-profit singing group which derived income from concerts. Most of the time Reverend Blackwood traveled across the country as an evangelist and performing with the quartet. He preached at the Church forty to forty-five times a year. Regular church services were conducted by Reverend Retzloff, the church's local full time pastor. The Board of Equalization defined a "parsonage" as "the home of a full time regular minister of a local church," and concluded Reverend Blackwood's home did not meet this definition *Id.* at 365-66. The trial court affirmed this conclusion, holding the Board's definition of parsonage was not arbitrary or capricious and there was substantial and material evidence to support the Board's denial of an exemption. *Id.* at 366. On appeal, this Court first concluded the Board's definition of parsonage was

---

[2] The standard of review governing judicial review of agency decisions contained within the Uniform Administrative Procedures Act would be more favorable to the State on this appeal. *See* Tenn. Code Ann. §§ 4-5-322(h) and 4-5-323. However, during oral argument the State took the position that this standard of review did not apply. In light of the State's concession and because our ultimate resolution of this appeal would be the same regardless of which standard was utilized, we will not create an issue where one otherwise does not exist and express no opinion on which standard of review otherwise would be appropriate.

not arbitrary or capricious. The *Blackwood* Court then concluded that the use of the house was not purely and exclusively for religious purposes, stating:

> [A]s we see it, the issue is not which minister lives in the home, but whether the property is used purely and exclusively for religious purposes. Parsonages, per se, are not given exemption under the statute; only those pieces of property that are used purely and exclusively for religious, charitable, scientific or educational purposes are exempt. Even though a church may have more than one parsonage used purely and exclusively for religious purposes, only one would be exempt. It does not follow that one parsonage is *always* exempt under all circumstances. It depends on the use of the property, and we are of opinion that the use of the property under the facts of this case is not purely and exclusively for religious purposes. The Reverend Blackwood and his family live in the property and he goes forth from there to make a living and preach, sing, and evangelize in the name of his religion. However, that does not make the property's use exclusively for religious purposes. The religious purpose may be incidentally served by the housing of a minister, but that incidental use and benefit does not bring the property within the statutory exemption. *Nashville v. Board of Equalization*, 210 Tenn. 587, 360 S.W.2d 458 (1961).

*Blackwood*, 614 S.W.2d at 366 (emphasis in original).

In the present case, the parties have furnished this Court with a copy of the unreported opinion in *Dozier v. State Board of Equalization*, a Court of Appeals decision filed on October 26, 1979.[3] In *Dozier*, one of the issues before the Court was whether the residence of Reverend Dozier, the Bishop for the Roman Catholic Diocese of Memphis, was exempt from taxation because it was used purely and exclusively for religious purposes. Bishop Dozier's house did not adjoin any church. The house contained, *inter alia*, a living room, dining room, kitchen, den, library, office, and a chapel where private Masses were held.[4] Bishop Dozier held meetings at his residence in connection with religious, social, and educational activities. *Dozier*, slip op. at 2. In concluding Bishop Dozier's property was not used purely and exclusively for religious purposes, the *Dozier* Court explained:

---

[3] Unfortunately, the *Dozier* opinion is not available on either LEXIS or WESTLAW.

[4] The Bishop's primary church, the Cathedral of the Immaculate Conception, already had one exempt parsonage. With regard to the chapel located within the Bishop's house, the Court upheld the denial of a pro-rata exemption because Masses held at the chapel were not open to the public.

In *Reeves v. Reeves*, 73 Tenn. 644, 648 (1880), it was argued that the residence of the minister was for religious or public worship. The Supreme Court stated:

> A parsonage is but a house in which a minister of the gospel resides, and has no more relation to public worship than the clothes he wears or the horse he rides. Both of these are incidentally convenient and necessary for the comfort of the minister, but have no necessary or natural connection with public worship. … The fact is, a residence for the minister is not for public worship any more than his barn or stable is. It is for the use of his family, for the shelter and comfort of himself and them, exactly as a lawyer's residence is, or a physician's is. Public worship might be had in either of these as well as the minister's house, but it could not be said the land on which they stood was held for public worship by reason of such use.

*Supra* at 648, 649.

> The primary use of … [Bishop Dozier's house] is not for religious purposes, nor can we say that its use is directly incidental to or reasonably necessary for the accomplishment of religious purposes. We agree with the Chancellor that "the property is not used purely and exclusively to further the purpose of the religious institution….

*Dozier*, slip op. at 7.

In the present case, we do not believe using the house for overseas missionaries temporarily returning to the United States constitutes an exempt use under the statute. This is not a use which is directly incidental to or reasonably necessary for the Church to accomplish its missionary work. If providing temporary housing to missionaries rose to this level, then certainly the Church would have secured such housing for its missionaries long before obtaining the house at issue only a few short years ago. Likewise, there is no proof that the Church's ability to provide missionary work overseas has been enhanced because of how it uses this house in Chattanooga. Having access to temporary housing while on home assignment is not reasonably necessary to a missionary being able to accomplish the Church's religious purpose. This house is provided to missionaries for temporary housing as a convenience to the missionaries, this being the purpose stated in Ms. Apple's will. While the religious purpose of the Church may be incidentally served by the temporary housing of missionaries, this incidental use and benefit does not bring the property within the statutory exemption. *See Blackwood*, 614 S.W.2d at 366. In other words, we agree with the ALJ that a missionary's temporary use of this house, as opposed to commercially available

housing in the area, would not enhance that missionary's overall contribution to the Church's program.

Even if we were to conclude that providing this house to missionaries on home assignment was purely and exclusively for religious purposes, the Church still would have another significant hurdle to overcome. More specifically, the statutory requirement that the use of the property be purely and exclusively for religious purposes has been interpreted "to refer to the direct, physical use of the property." *Christian Home for the Aged, Inc. v. Tennessee Assessment Appeals Comm'n*, 790 S.W.2d 288, 291 (Tenn. Ct. App. 1990)(quoting *Book Agents of Methodist Episcopal Church South v. State Board of Equalization*, 513 S.W.2d 514, 523 (Tenn. 1974)). In the present case, the Church admits that it permitted the house to be used temporarily: (1) by an assistant minister who had relocated to the Chattanooga area and was searching for permanent housing; and (2) by a missionary from Colorado whose son was receiving medical treatment in Atlanta. We agree with the Trial Court that while allowing the house to be used for these purposes was commendable, it eviscerates any argument that the house actually is used purely and exclusively for religious purposes. It also is worth noting that the World Missions Commission has approved temporary use of the house by Church ministry staff when needed, such as when their regular house is being remodeled, and assuming the house is not otherwise needed by a missionary at that same time. This permissible use of the house further detracts from the Church's position.

The Church argues, and we agree, that the exemption in favor of religious, charitable, scientific or nonprofit educational institutions found in Tenn. Code Ann. § 67-5-212(a)(1)(A) is to be liberally construed. However, we cannot ignore the clear language of the statute in order to give it a strained liberal construction. There is absolutely no doubt that the Church's missionary work is extremely important to the Church and considerable funds are spent toward carrying out this program. Nevertheless, we conclude that the evidence does not preponderate against the factual findings of the Trial Court and its holding that the property at issue is not exempt because the Church's use of the house is not purely and exclusively for religious purposes.

### Conclusion

The judgment of the Trial Court is affirmed and this case is remanded to the Trial Court for such further proceedings as are required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellant, First Presbyterian Church of Chattanooga, and its surety.

_____
D. MICHAEL SWINEY, JUDGE