IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 22, 2004 Session

## YOUTH PROGRAMS, INC. v. TENNESSEE STATE BOARD OF EQUALIZATION, ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-02-1024-3    D. J. Alissandratos, Chancellor

No. W2003-02817-COA-R3-CV - Filed December 14, 2004

The chancery court reversed the Assessment Appeals Commission and held that Youth Programs, a charitable organization, is entitled to a property tax exemption on real property in Shelby County used in conjunction with the FedEx/St. Jude Classic golf tournament. The trial court determined the disputed property is used exclusively for a charitable purpose and that an unusable area is used constructively and is likewise exempt. The Shelby County Assessor of Property and the State appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY J. KIRBY, J., joined.

Paul G. Summers, Attorney General and Reporter, Mary Ellen Knack, Assistant Attorney General, for the appellant, Tennessee State Board of Equalization.

Brian L. Kuhn, Shelby County Attorney and Thomas E. Williams, Assistant County Attorney, for the appellant, Shelby County Assessor of Property.

R. Grattan Brown, Jr. And Katherine P. Griffin, Memphis, Tennessee, for the appellee, Youth Programs, Inc.

## OPINION

This dispute requires us to determine whether real property located in the Southwind Planned Development ("Southwind") in Shelby County ("the property") and owned by Youth Programs, Inc. ("Youth Programs") is exempt from property taxation under Tennessee Code Annotated § 67-5-212(a)(1)(A). The parties do not dispute the facts underlying this lawsuit, and stipulated to them at trial.

Youth Programs was organized in 1960 and is a non-profit, 501(c)(3) organization.[1]  Its purpose is to raise funds for other 501(c)(3) charitable organizations, and St. Jude Children's Research Hospital, located in Memphis, ("St. Jude") has been its sole beneficiary since 1970.  Youth Programs conducts one event a year: the FedEx/St. Jude Classic golf tournament ("the tournament").  The tournament is a PGA professional tournament and is conducted pursuant to the terms of a PGA Tour Sponsor Agreement executed in 1999.  The PGA Tour receives entry fees for players who participate in the tournament.  Additionally, Youth Programs and Federal Express Corporation ("FedEx") entered into a Sponsorship Agreement in 1998, pursuant to which FedEx is the title sponsor of the tournament.  Under the Sponsorship Agreement, FedEx provides security services, express shipping services, and communication at no charge.  FedEx also makes monetary contributions to Youth Programs to partially fund the tournament's three-million dollar prize purse.  Youth Programs generates the sums necessary to fund the remainder of the purse and to pay other costs.  As of December 2001, when this matter was heard before the Assessment Appeals Commission, Youth Programs was conducting the tournament with five full-time and six part-time staff members and approximately 1,400 community volunteers.  Youth Programs donates the proceeds from the tournament to St. Jude.  The tournament had generated over $12,500,000 for St. Jude through the date of the 2001 hearing.

Youth Programs uses the property which is the subject of this action for one month a year, exclusively for the tournament.  For the remainder of the year, the property is closed to the public and unused.  This property includes two parcels of land: Parcel 9/Lot C and Lot 25.  Parcel 9/Lot C is a 24 acre lot.  Youth Programs uses 17 acres of this parcel as a staging area for three weeks prior to the tournament and as a parking area for approximately 1,700 vehicles for one week during the tournament.  The remainder of Parcel 9/Lot C is wooded and unusable.  Youth Programs uses Lot 25 as a walkway from Parcel 9/Lot C to the tournament grounds.  For the tournament itself, Youth Programs uses the golf facility at Southwind free of charge under an agreement entered into between Youth Programs and the Tournament Players Club at Southwind. Much of the revenue raised from the tournament is generated by the sale of corporate ticket packages, which include passes for parking on the property.  Phil Cannon, the Director of the tournament, characterized the parking passes as an "integral part of every sale we (Youth Programs) make(s)."

In September 1999, Youth Programs applied to the State Board of Equalization for a charitable exemption from ad valorem property taxation on the property.  The Shelby County Assessor of Property ("the County") and the Tennessee Board of Equalization ("the Board") denied Youth Programs' applications for property tax exemptions relative to the property.  The Board reasoned that, despite its not-for-profit status, Youth Programs fundamentally is engaged in the business of producing a sporting event.  The Board determined, therefore, that Youth Programs was

---

[1]Youth Programs is exempt from the payment of federal income taxes as a charitable entity under 26 U.S.C. § 501(c)(3).

not entitled to property tax exemption under Tennessee Code Annotated § 67-5-212(a)(3)[2] because it uses the property for commercial rather than charitable purposes. The Assessment Appeals Commission affirmed the Board's determination.

Youth Programs appealed the determination of the Assessment Appeals Commission to the Shelby County Chancery Court, which reversed. The chancellor determined that, as a charitable organization whose sole purpose is to raise funds for other charitable organizations, Youth Programs uses its property exclusively in accordance with its charitable purpose as required by Tennessee Code Annotated § 67-5-212(a)(1)(A). The chancellor further held Youth Programs is not fundamentally engaged in a business enterprise, and that the use of its property was a reasonable use. Accordingly, the chancellor held Youth Programs is exempt from ad valorem property taxation. The State and the County (collectively, "the State") filed timely appeals to this Court. We affirm.

### *Issues Presented*

Appellants present the following issues for our review:

1. Whether the chancery court erred in holding that Youth Programs was entitled to an exemption from ad valorem property taxation for property used as a parking and staging area for the FedEx/St. Jude Classic.

2. Whether the chancery court erred in holding that Youth Programs was entitled to a property tax exemption for the entire 24-acre tract of land known as

---

[2]Section 67-5-212(a)(3) provides:

(3) The property of such institution shall not be exempt if:
    (A) The owner, or any stockholder, officer, member or employee of such institution shall receive or may be lawfully entitled to receive any pecuniary profit from the operations of that property in competition with like property owned by others which is not exempt, except reasonable compensation for services in effecting one (1) or more of such purposes, or as proper beneficiaries of its strictly religious, charitable, scientific or educational purposes; or
    (B) The organization thereof for any such avowed purpose be a guise or pretense for directly or indirectly making any other pecuniary profit for such institution, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one (1) or more of these purposes.
The real property of any such institution not so used exclusively for carrying out thereupon one (1) or more of such purposes, but leased or otherwise used for other purposes, whether the income received therefrom be used for one (1) or more of such purposes or not, shall not be exempt; but if a portion only of any lot or building of any such institution is used purely and exclusively for carrying out thereupon one (1) or more of such purposes of such institution, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion shall be subject to taxation.

Tenn. Code Ann. § 67-5-212(a)(3)(Supp. 2004).

Parcel 9/Lot C when it was undisputed that only 17 acres of the property were actually used by Youth Programs.

The County presents the additional issue of whether the trail court applied the incorrect standard of review or incorrectly substituted its judgment for that of the State Board of Equalization.

### *Standard of Review*

This appeal involves determinations of matters of law. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Analysis*

We first address the issue raised by the County regarding the trial court's standard of review. The County asserts the trial court incorrectly applied a *de novo* standard of review. The Administrative Procedures Act governs appellate review of an administrative law judge's decision. *Freedom Broad. of Tenn., Inc. v. Tennessee Dep't of Revenue*, 83 S.W.3d 777, 780 (Tenn. Ct. App.2002)(citing *Sanifill of Tenn., Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 809 (Tenn.1995)). The Act provides, in pertinent part:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1998). Review of an agency's findings of fact is limited to the record of the case. Tenn. Code Ann. § 4-5- 322(g)(1998); *Freedom Broad.*, 83 S.W.3d at 781 (citing *Sanifill*, 907 S.W.2d at 810). The application of the law to the facts, however, is a question of law that may be addressed by the courts. *Id.* The question of whether the purpose for which property is used qualifies the property as exempt from taxation under the statutes is a question of law for the courts. *Book Agents of the Methodist Episcopal Church, S. v. State Bd. of Equalization*, 513 S.W.2d 514, 521 (Tenn. 1974)(citing *Oak Ridge Hosp. v. City of Oak Ridge*, 420 S.W.2d 583 (Tenn. 1967)).

In the present case, the parties have stipulated to the facts. The manner in which Youth Programs uses its property is not disputed. The only question before the trial court was whether this

purpose qualifies the property for tax exempt status under section 67-5-212. Therefore, the trial court applied the correct standard of review.

We turn next to whether the chancery court erred in determining Youth Programs is entitled to an ad valorem property tax exemption on property used exclusively for the tournament to raise funds for St. Jude. Article 2, Section 28 of the Constitution of Tennessee subjects all property to taxation but grants authority to the legislature to exempt certain properties, including properties "held and used for purposes purely religious, charitable, scientific, literary, or educational." The legislature has exercised this authority through the Tennessee Code, which, as currently codified at 67-5-212, provides:

> (a)(1)(A) There shall be exempt from property taxation the real and personal property, or any part thereof, owned by any religious, charitable, scientific or nonprofit educational institution which is occupied and used by such institution or its officers purely and exclusively for carrying out thereupon one (1) or more of the purposes for which the institution was created or exists, or which is occupied and used by another exempt institution purely and exclusively for one (1) or more of the purposes for which it was created or exists under an arrangement whereunder the owning institution receives no more rent than one dollar ($1.00) per year; provided, that the owning institution may receive a reasonable service and maintenance fee for such use of the property; and provided further, that if the owning institution owns and operates real and personal property consisting of a parking garage and leases parking spaces in such parking garage to a metropolitan hospital authority for a metropolitan government hospital and the staffing for such hospital by a medical and dental school, such parking garage shall be exempt from property taxation, provided that from and after July 1, 2004, such parking garage shall be exempt from property taxation only to the extent parking spaces in such parking garage are actually leased by the metropolitan government hospital authority; and provided further, that no church shall be granted an exemption on more than one (1) parsonage, which shall include not more than three (3) acres of land except as hereinafter provided in this subdivision (a)(1); and provided further, that no property shall be totally exempted, nor shall any portion thereof be pro rata exempted, unless such property or portion thereof is actually used purely and exclusively for religious, charitable, scientific or educational purposes.
>
> (B) Notwithstanding the limitations contained in this subdivision (a)(1), that portion of the real property owned by the headquarters of a religious institution, which was previously used as the campus of a college owned and operated by such institution is exempt from taxation, if such real property is leased to a non-profit organization exempted from the payment of federal income taxes by Internal Revenue Code (26 U.S.C. § 501(c)(3)) which is leasing the property from such religious institution to operate a kindergarten through grade twelve (K-12) school and which organization has been

accredited by the Tennessee association of non-public academic schools. This exemption shall be granted even though the religious institution is receiving more than a reasonable service and maintenance fee for such use of the property but less than fair market value through a lease agreement with such non-profit organization. Such tax exemption shall be retroactive to the first use and reclassification of property to which it applies.

(2) In determining the exemption applicable to a post-secondary educational institution, there shall be a presumption that the entire original campus of an institution chartered before 1930 is an historical and integral entity, and is exempt so long as no particular portion of such campus is used for nonexempt purposes.

(3) The property of such institution shall not be exempt if:

(A) The owner, or any stockholder, officer, member or employee of such institution shall receive or may be lawfully entitled to receive any pecuniary profit from the operations of that property in competition with like property owned by others which is not exempt, except reasonable compensation for services in effecting one (1) or more of such purposes, or as proper beneficiaries of its strictly religious, charitable, scientific or educational purposes; or

(B) The organization thereof for any such avowed purpose be a guise or pretense for directly or indirectly making any other pecuniary profit for such institution, or for any of its members or employees, or if it be not in good faith organized or conducted exclusively for one (1) or more of these purposes.

The real property of any such institution not so used exclusively for carrying out thereupon one (1) or more of such purposes, but leased or otherwise used for other purposes, whether the income received therefrom be used for one (1) or more of such purposes or not, shall not be exempt; but if a portion only of any lot or building of any such institution is used purely and exclusively for carrying out thereupon one (1) or more of such purposes of such institution, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion shall be subject to taxation.

Tenn. Code Ann. § 67-5-212(a)(Supp. 2004). In Tennessee, unlike many other states, tax exemption statutes are construed liberally in favor of religious, charitable, scientific, and educational institutions. *Book Agents*, 513 S.W.2d at 521(citing *George Peabody Coll. for Teachers v. State Bd. of Equalization*, 407 S.W.2d 443 (Tenn. 1966)).

The parties do not dispute that, under section 67-5-212, the property must be used exclusively for a charitable purpose in order to be exempt from property taxation. Rather, the parties raise the issue of what constitutes a charitable use under the Code. Youth Programs asserts that it is exempt from taxation under section 67-5-212 because it is a non-profit, charitable organization which uses the property exclusively for its stated charitable purpose of raising funds for St. Jude through the

tournament.[3]  The State does not argue that proceeds from the tournament do not inure to the benefit of St. Jude.  Rather, the State asserts that Youth Programs confuses its charitable purpose (raising funds for St. Jude) with a commercial activity it undertakes in order to raise these funds (the tournament).  The State contends that when Youth Programs conducts the tournament, it is embarking in a business for profit.  It argues that the fact that Youth Programs donates the profits to St. Jude does not change the nature of the tournament, which is a commercial enterprise.  In support of its argument, the State cites *Mid-State Baptist Hospital, Inc. v. City of Nashville*, 366 S.W.2d 769, 772 (Tenn. 1963), wherein the Tennessee Supreme Court held: "when a charity embarks in business for profit it becomes liable for taxation as any other business establishment."

Thus, the question before this Court is whether the exclusive use of the property as a staging/parking area for the tournament, where the property is owned by a charitable organization and where the proceeds generated by the property benefit another charitable organization, constitutes a charitable use under the statute.  As the parties agree, there is no previously reported Tennessee case involving the same factual circumstances.  After reviewing the reasoning contained in the body of Tennessee case law, however, and in light of the purposes of the statute and the liberal construction afforded to it, we hold that the property which is the subject of this lawsuit is exempt from property taxation under section 67-5-212.

Tennessee courts have held that, in order to be exempt from taxation, property owned, occupied, and used by a charitable institution must be used exclusively for carrying out one or more of the purposes for which the institution exists or for a purpose which is directly incidental to the institution's purpose.  *City of Nashville v. State Bd. of Equalization*, 360 S.W.2d 458, 466 (Tenn. 1962); *George Peabody Coll. for Teachers v. State Bd. of Equalization*, 407 S.W.2d 443, 446 (Tenn. 1966).  It is use of the property, and not the charitable nature of its owner, which determines its exempt status.  *Mid-State Baptist Hosp., Inc. v. City of Nashville*, 366 S.W.2d 769, 772 (Tenn. 1963).  Property that is used by a charity embarking on a business for profit on that property becomes liable for taxation.  *Id.*

The State relies heavily on *City of Nashville v. State Board of Equalization*, 360 S.W.2d 458 (Tenn. 1962), *Mid-State Baptist Hospital, Inc. v. City of Nashville*, 366 S.W.2d 769 (Tenn. 1963), and *Book Agents of the Methodist Episcopal Church v. State Board of Equalization*, 513 S.W.2d 514 (Tenn. 1974), cases in which the supreme court considered the status of property used by non-profit institutions.  In *City of Nashville*, the property in dispute was owned by the Sunday School Board of the Southern Baptist Convention ("the Sunday School Board"), whose principal activity was the publication and sale of religious materials and publications to churches in the Southern Baptist Convention and their members.  *City of Nashville*, 360 S.W.2d at 460.  The City of Nashville argued that the portion of the Sunday School Board's property used for the parking lots, cafeteria, and snack bar were not used for the purposes stated in the Sunday School Board's charter and that they were not, therefore, exempt from taxation.  *Id.* at 461.  The Sunday School Board, on the other hand,

---

[3]The State does not contend that St. Jude is not a charitable institution.

argued that these portions of its property were being used "*either* purely and exclusively for religious purposes *or for purposes so close thereto* as to come within the exemption provided by the statute." *Id*.

The court in *City of Nashville* analyzed the evolution of the exemption statutes and case law and stated, "it is seen that the scope of tax exemption of property of such institutions has been steadily narrowed by decisions of this Court under our successive revenue acts[.]" *City of Nashville v. State Bd. of Equalization*, 360 S.W.3d 458, 464 (Tenn. 1962). The court noted that the statute limited the exemption to property *"occupied"* by an exempt institution *"exclusively"* for carrying out the "purposes for which the institution was created or exists." *Id.* at 465. It further noted that property is not exempt where it is not used *"exclusively"* for carrying out the purposes of the institution or where anyone receives or is entitled to receive "any pecuniary profit from the operations of that property in competition with like property owned by others which is not exempt." *Id.* at 465-66.

The *City of Nashville* court opined,

> [w]e think, however, it can hardly be said that the [Sunday School] Board's use of these parts of its real estate, as above described, for the operation of its parking lots, cafeteria, and snack bar, is a use 'for purposes *purely religious*,' as contemplated in our Constitution (Art. 2, sec. 28), or a use '*exclusively*' for a *religious purpose* of its charter, as contemplated by the Act of 1935.

*Id.* at 467. Despite the fact that the portions of the property in question were used only by the Sunday School Board's employees and were not operated for profit, the court found, "such operations are not religious activities, but are secular business enterprises, carried on in competition with other like businesses that pay taxes to the state, the county, and the city; and such businesses are taxed as a privilege." *Id.* It held that since the Sunday School Board did not use these portions of their property "exclusively" for religious purposes, the property used for parking lots, a cafeteria, and a snack bar were not exempt from taxation. *Id.*

In *Mid-State Baptist Hospital*, the supreme court addressed the question of when property that had been exempt from taxation would become taxable where a portion of the property was under construction and that portion was to be used commercially. *Mid-State Baptist Hosp., Inc. v. City of Nashville*, 366 S.W.2d 769 (Tenn. 1963). The City of Nashville argued that, because the property was under construction, it was not being used exclusively for the charitable purposes for which the Hospital was built and that it was, therefore, subject to taxation. *Id.* at 772. Noting Tennessee's liberal construction of a tax exemption in favor of charitable institutions, the court held, "[w]hen real property is not on the tax rolls by reason of being exempt it should take *use* to put it back on, not intention." *Id.* at 773. The supreme court affirmed the chancellor's determination that the Hospital would not be liable for the tax on the property under construction until the year in which it was put to commercial use. *Id.*

The supreme court re-visited the issue of what constitutes use for the purposes of exemption from taxation in *George Peabody College for Teachers v. State Board of Equalization*, 407 S.W.2d 443 (Tenn. 1966). In *George Peabody College*, the court considered whether facilities owned by an educational institution and used as student housing were subject to property taxation to the extent they were occupied by family members of the students. *Id.*[4] The *George Peabody College* court noted that the courts below had "obviously relied upon the prior interpretation and application by this Court of T.C.A. s67-502(2) in City of Nashville v. State Board of Equalization" when determining the property was not exempt from taxation. *Id.* It further noted and emphasized, however, that,

> [s]ince the decision in that case, this Court in *Mid-State Baptist Hospital, Inc. v. City of Nashville*, 211 Tenn. 599, 366 S.W.2d 769 (1963), has emphatically restated the proposition that in this State, contrary to most other states, tax exemption in favor of religious, scientific, literary and educational institutions are liberally construed rather than strictly. It is further pointed out that the opinion in City of Nashville v. State Board of Equalization . . . in nowise dilutes the rule of liberal interpretation.

*Id.* at 445.

After reviewing the history of Tennessee statutes granting tax exempt status to religious, charitable, scientific, and educational institutions, the *George Peabody College* court noted that the principal underlying the several versions of the statutory exemption with regard to the exclusive use requirement has remained the same. "[T]hat is, that when property is used for a purpose directly incidental to the primary purpose, [in this case] education, it is to be regarded as exempt from taxation. The wisdom imparted in . . . [*State v. Fisk University*, 87 Tenn. 233, 10 S.W. 284 (1888)] is as valid now as it was at the time of delivery in 1888." *Id.* The *George Peabody College* court held that the housing facilities provided by the college to students and their spouses and children were directly incidental to, and an integral part of, the educational purposes of the college and were, therefore, exempt from property taxation. *Id.* at 446.

In *Book Agents*, the supreme court again considered the status of property belonging to a religious institution engaged in publishing and printing. *Book Agents of the Methodist Episcopal Church v. State Bd. of Equalization*, 513 S.W.2d 514 (Tenn. 1974). The court held that the portion of property used for the printing and publication of materials related to the religious purpose of the

---

[4]As noted by the supreme court, following the decision of the Board of Equalization in *George Peabody College*, the legislature enacted section 67–502, currently section 67-5-213, which provides:

> (a) Real estate owned by an educational institution and used primarily for dormitory purposes for its students, even though other student activities are incidentally conducted therein, and even though the student's spouse or children may reside therein, is exempt from taxation.

Tenn. Code Ann. § 67-5-213(2003).

institution (Sunday school curriculum materials, officer training manuals, commentaries on denominational government and similar literature) were exempt from taxation. *Id.* at 524. It further held that the publishing and printing of secular materials and commercial printing were not exempt uses of the property. *Id.* at 524-25. The *Book Agents* court affirmed the chancellor's order that a "tax be levied to the extent of the dollar volume of exempt activity as compared with the entire dollar volume of business done by the property owners."[5] *Id.* at 525.

In reaching its holding, the *Book Agents* court recognized that "[t]he exclusive use requirement has been interpreted to refer to the direct, physical use of property rather than the ultimate use of proceeds from the activity." *Id.* at 523. The court further noted that the fact that the institution uses its property in competition with tax-paying businesses is relevant but not determinative to tax exempt status. *Id.* The court stated, "[o]ther companies could compete with an institution's efforts to accomplish an exempt institutional purpose, but circumstances may indicate that the purpose is not exempt." *Id.* In sum, the determinative question was not solely whether the use of the property could be considered fundamentally commercial in nature, but whether the property was used for the stated purposes for which the exempt institution was created or exists.

In 1984, the supreme court again considered the tax status of property incidental to the stated purposes of an exempt institution. In *Methodist Hospitals of Memphis*, the State sought to levy an ad valorem property tax on a parking lot owned by the Hospital and used to provide free parking to Hospital employees. *Methodist Hosps. of Memphis v. Assessment Appeals Comm'n*, 669 S.W.2d 305, 306 (Tenn. 1984). The *Methodist Hospitals* court noted an apparent conflict in the law due to the court's interpretation of the requirement that exempt property must be used "purely and

---

[5]The *Book Agents* court addressed the taxing authorities' contention that if the property was not entirely used for exempt purposes, then all the property was taxable by noting that then section 67–502(2) provided, in pertinent part:

> if a portion only of any lot or building of any such institution is used exclusively for carrying out thereupon one (1) or more of such purposes of such institution, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion, to the extent of the value of such remaining or other portion, shall be subject to taxation.

*Book Agents*, 513 S.W.2d 514, 525 (Tenn 1974) (quoting Tenn. Code Ann. § 67- - 502(2)).

> The provision as currently codified states:

> The real property of any such institution not so used exclusively for carrying out thereupon one (1) or more of such purposes, but leased or otherwise used for other purposes, whether the income received therefrom be used for one (1) or more of such purposes or not, shall not be exempt; but if a portion only of any lot or building of any such institution is used purely and exclusively for carrying out thereupon one (1) or more of such purposes of such institution, then such lot or building shall be so exempt only to the extent of the value of the portion so used, and the remaining or other portion shall be subject to taxation.

Tenn. Code Ann. § 67-5-212(a)(3)(Supp. 2004).

-10-

exclusively" for the institution's purpose. *Id.* The court stated, however, "[i]n a series of cases decided since *City of Nashville v. State Board of Equalization* . . . this court has held that the use requirement for property to be exempt is met where the use is 'directly incidental to or an integral part of' one of the recognized purposes of an exempt institution." *Id.* at 307. Noting the mobility of contemporary society and the need to provide safe, convenient parking around-the-clock to employees, the court held the Hospital employee parking lot was exempt from taxation as an "essential and integral part" of the Hospital. *Id.* Similarly, in *Shared Hospital Services Corporation v. Ferguson*, the supreme court held that the laundry facilities of a non-profit cooperative whose members were hospitals and which supplied laundry services to those members was exempt from taxation. *Shared Hosp. Servs. Corp. v. Ferguson*, 673 S.W.2d 135 (Tenn. 1984). In that case, the State argued that Shared Hospital Services was a large commercial laundry which operated in direct competition with similar tax-paying enterprises. *Id.* at 137. The State further contended the facility's lunchroom and parking lot were subject to taxation under *City of Nashville*. *Id.* The supreme court held the parking lot was exempt under *Methodist Hospitals,* and that the lunchroom also was exempt. The court further held that laundry services were part of hospital operations, and that the property of the non-profit corporation formed solely to provide those services was exempt from taxation. *Id.* at 139.

Subsequent to the supreme court's holding in *Shared Hospital Services*, this Court considered whether a gift shop located within a hospital, operated by the hospital, and staffed by volunteers was exempt from taxation under section 67-5-212. *Middle Tenn. Med. Ctr. v. Assessment Appeals Comm'n*, No. 01A01-9307-CH-00324, 1994 WL 32584 (Tenn. Ct. App. Feb. 4, 1994)(perm. app. denied May 9, 1994). In *Middle Tennessee Medical Center*, we held that the gift shop was "a traditional hospital function" and was "'directly incidental to or an integral part of' the charitable function of the medical center." *Id.* at *4. Accordingly, we held the gift shop was exempt from taxation under the section. *Id.* We further determined that an exercise or wellness center located in the hospital but advertised to the general public was exempt only to the extent that it was utilized by patients under a doctor's care. *Id.* at *5.

This Court recently determined that certain real properties owned by religious institutions were not exempt from taxation in *First Presbyterian Church of Chattanooga* and *Christian Home for the Aged*. In *First Presbyterian*, we considered the tax status of a house owned by a church and used for the convenience of missionaries on home assignment. *First Presbyterian Church of Chattanooga v. Tennessee Bd. of Equalization*, 127 S.W.3d 742 (Tenn. Ct. App. 2003)(perm. app. denied Feb. 2, 2004). The property in dispute in *First Presbyterian* was church property used to provide housing to overseas missionaries temporarily returning to the United States. *Id.* It also was occupied temporarily by a church minister who was relocating to Chattanooga while he was searching for permanent housing. *Id.* We held that although the church's mission projects were commendable, the use of property as temporary housing for the convenience of oversees missionaries was not "reasonably necessary to a missionary being able to accomplish the Church's religious purpose" and, therefore, was not within the statutory exemption. *Id.* at 748-49. Similarly, in *Christian Home for the Aged*, we determined that retirement community property owned by a religious institution was not exempt from taxation under section 67-5-212(a). *Christian Home for*

-11-

*the Aged, Inc. v. Tennessee Assessment Appeals Comm'n.*, 790 S.W.2d 288, 291 (Tenn. Ct. App. 1990)(perm. app. denied May 7, 1990). In *Christian Home for the Aged*, we noted that the property primarily was occupied for residential purposes and not to further any religious purpose. *Id.* Further, the residential facilities were not offered without rent or donations but were available only to those who were financially able to afford them and who had been "scrutinized for financial ability as well as moral character and physical condition." *Id.* at 292. We accordingly held that the chapel located within the retirement community qualified for exemption from taxation, but that the residential facilities did not. *Id.*

In the case now before this Court, the State does not dispute that Youth Programs is a non-profit organization, nor does it assert that Youth Programs does not, in fact, donate the proceeds of the tournament to another charitable institution. The State also does not dispute that Youth Programs was created for the purpose of raising funds for other charities or that, since 1970, Youth Programs has existed to raise funds for St. Jude through the tournament. Rather, in its argument, the State asserts that "the fact that Youth Programs donates large sums of money to a charitable institution does not make Youth Programs a charitable institution within the meaning of this state's property tax exemption statutes." The State further contends that the property is not exempt because the use of the property as a parking lot/staging area for the tournament is a revenue-generating enterprise and not a charitable endeavor. The State's argument is that, although Youth Programs uses the property exclusively for its stated purpose of raising funds for charities (in this situation, St. Jude), the fund-raising event itself is fundamentally commercial in nature. Additionally, the State asserts that, because Youth Programs uses the property for only one month a year, its use is "*de minimus*" and does not justify removal of the property from the tax rolls.

We first turn to the State's assertion that Youth Programs is not a charitable institution for purposes of the tax exemption statutes and, therefore, is not exempt from ad valorem property taxation under section 67-5-212(a). In order to be exempt from taxation under section 67-5-212(a), the institution must qualify as charitable. *Shared Hosp. Servs. Corp. v. Ferguson*, 673 S.W.2d 135, 137 (Tenn. 1984). This poses the question of whether institutions which exist solely to raise funds for other charities and which, therefore, do not *themselves* engage in religious, scientific, educational, or medical activities, or in the traditionally recognized "good works" activities of feeding the poor or housing the homeless, should be considered charitable as contemplated by the statutes.

In considering this question, we again note that Tennessee historically has construed its exemption statutes liberally in favor of charitable institutions in recognition that such institutions confer a benefit on the public and consequently relieve, to some extent, the state's burden to care for and advance the interests of its citizens. *Book Agents of the Methodist Episcopal Church v. State Bd. of Equalization*, 513 S.W.2d 514, 521 (Tenn. 1974)(quoting *M. E. Church, S. v. Hinton*, 21 S.W. 321, 322 (Tenn. 1893)). At the same time, however, we must balance this construction against the "fundamental rule that all property shall be taxed and bear its just share of the cost of government, and no property shall escape this common burden, unless it has been duly exempted by organic or statute law[.]" *City of Nashville v. State Bd. of Equalization*, 360 S.W.2d 458, 461 (Tenn. 1962)(citations omitted). Further, not every use of property by a charitable institution is

automatically entitled to an exemption merely because it can be characterized as generally promoting the institution's purpose in some way, particularly where the use is a revenue-generating one. *See Middle Tennessee Med. Ctr. v. Assessment Appeals Comm'n*, No. 01A01-9307-CH-00324, 1994 WL 32584, at * 5 (Tenn. Ct. App. Feb. 4, 1994)(*perm. app. denied* May 9, 1994).

The Code defines a charitable institution as "any nonprofit organization or association devoting its efforts and property, or any portion thereof, exclusively to the improvement of human rights and/or conditions in the community." Tenn. Code Ann. § 67-5-212(c)(Supp. 2004). In light of the supreme court's holding in *Shared Hospital Services*, discussed above, we believe Youth Programs qualifies as a charitable institution for purposes of Tennessee's tax exemption statutes.[6] Youth Programs is not, contrary to the State's assertion, a revenue-generating organization in a commercial sense. Rather, it exists to raise funds for recognized charities and, since 1970, has raised funds exclusively for St. Jude. This unquestionably confers a benefit on the public and improves conditions in the community.

We next consider the State's argument that Youth Programs was not created to provide staging or parking areas for golf tournaments, and that, assuming Youth Programs qualifies as a charitable institution, the golf tournament is fundamentally commercial in nature. Although we agree that Youth Programs' stated purpose is not to provide staging areas or parking lots, neither is its purpose to provide health care, conduct scientific inquiry, educate the public, or to engage in religious activity. Rather, it is a charitable institution organized to raise funds for other charities, and it has been granted federal tax-exempt status as a charitable institution to engage in this purpose. In light of this purpose, we cannot imagine an activity in which Youth Programs might engage that would not be a considered a commercial endeavor were it not conducted by a charitable institution

---

[6]We note Justice Fones dissent in *Shared Hospital Services Corporation*. In his dissent, Justice Fones stated:

> The Tennessee definition of a charitable institution requires, in essence, that its efforts and property be devoted "exclusively to the improvement of human rights and/or conditions in the community." I cannot agree that a legal entity carrying out its chartered purpose of furnishing reusable or disposable laundry supplies to non-profit charitable or other exempt institutions is thus devoting its efforts and property exclusively to the improvement of human rights and/or conditions in the community. The furnishing of laundry supplies is simply not ministering to the needs of the community.
>
> In Tennessee we have a three-pronged test that must be met in order to qualify for the exemption at issue in this case. First, the institution must be qualified as a religious, charitable, scientific or educational institution. Second, it must own the property that it claims to be exempt. Third, the property must be occupied and used exclusively for one or more of the exempt purposes of its charter by the exempt institution. *Book Agents of Methodist Episcopal Church v. State Board of Equalization*, 513 S.W.2d 514 at 522 (Tenn.1974). Plaintiff's property is used exclusively as a laundry which is not an exempt purpose and it seems to me that even if it could qualify as a charitable institution it would still fail to meet the third necessary prerequisite.

*Shared Hospital Servs. Corp. v. Ferguson*, 673 S.W.2d 135, 140 (Tenn. 1984)(Fones, J., dissenting).

and the proceeds not given to a charity. The simplest bake sale involves the commercial activity of selling baked goods and, albeit to a negligible extent, competes with commercial, tax-paying entities conducting the same enterprise. The fact that a charitable institution's activities may be similar to or in competition with tax-paying businesses does not by itself render the property on which it conducts those activities taxable. *Book Agents*, *of the Methodist Episcopal Church v. State Bd. of Equalization*, 513 S.W.2d 514, 523 (Tenn. 1974). For-profit entities may exist to provide the same services as non-profit, charitable entities. *Id.* We recognize, moreover, that the tournament in this case includes a substantial purse or profit to the tournament winner. However, the fact that a profit is generated by an organization's activities is not determinative. Section 67-5-212 disallows the exemption only where stockholders, officers, members, or other employees receive or are entitled to receive profits other than reasonable compensation for services. Tenn. Code. Ann. § 67-2-212(a)(3)(A); *Book Agents*, 513 S.W.2d at 523.

The primary inquiry in the cases discussed above was whether the non-profit, educational, charitable, or religious institution or hospital used the property exclusively and purely for the purpose(s) for which the institution was created or exists, or for a purpose directly incidental to the institutional purpose(s). The same inquiry is determinative here. If the organization is charitable for the purposes of section 67-5-212, and if it uses its property specifically and exclusively for the purposes for which is was created or exists, or for a purpose directly incidental to that purpose, then, assuming compliance with the remainder of the section, that property is tax-exempt. Youth Programs undisputedly uses its property to raise funds for St. Jude and, therefore, uses it for its institutional purpose.

We next consider the State's contention that Youth Programs' use of the property is a *de minimus* use which cannot justify taking this real property off the tax rolls. Although Youth Programs uses the property for only one month a year, there is nothing in the statutes or case law which would mandate continuous use. On the contrary, under *Mid-State Baptist Hospital, Inc. v. City of Nashville*, 366 S.W.2d 769 (Tenn. 1963), where the supreme court held that exempt property under construction and therefore unused would not be subject to taxation until converted by the exempt hospital to a commercial use, continuous use is not required for purposes of the exemption. Applying the reasoning of the Tennessee Supreme Court cases discussed above, we hold the property owned and used by Youth Programs in this case is exempt from taxation under section 67-5-212(a).

We finally turn to the status of the portion of Youth Programs' property that is unused and unusable. Parcel 9/Lot C consists of 24.17 acres property. Seventeen acres actually are used for parking; the remainder is wooded, includes a drainage ditch, and cannot be used for parking or staging purposes in its present condition. The State asserts that, if the property actively used by Youth Programs is exempt from taxation, the wooded portion of the property which is not used is subject to taxation. The State's argument, as we understand it, is that the exemption requires actual active *use*, and the seven wooded acres are simply not used and therefore not exempt.

Youth Programs, on the other hand, asserts that, although the wooded area is not used for parking, it is necessary because it includes the access road from the public road to the parking area.

-14-

Youth Programs further asserts the drainage ditch is necessary to allow water to flow through the property. The trial court held this portion was "constructively used" and exempt from taxation.

Clearly, if this portion of Youth Programs' property were leased to a commercial enterprise or used for a purpose not related to the charitable purposes of Youth Programs, it would be subject to taxation. In this case, however, the wooded area is substantially unusable in its present condition, and the drainage ditch allows water to flow through the property. We agree with the trial court that it is exempt from taxation under section 67-5-212(a).

### *Conclusion*

We are not insensitive to the State's position in this case. The State's argument, in essence, is predicated on the larger questions of limitations and potential abuse of the exemption statutes. While we do not believe such abuse exists in this case, we observe that the statute is, as previously noted by the courts, somewhat ambiguous. *See Book Agents of the Methodist Episcopal Church v. State Bd. of Equalization*, 513 S.W.2d 514, 527(Tenn. 1974)(Leech, S.J., concurring). Thus, as we have previously emphasized, each case must be decided on its facts and upon the application of the law to those specific facts. *See, e.g., Middle Tennessee Med. Ctr. v. Assessment Appeals Comm'n*, No. 01A01-9307-CH-00324, 1994 WL 32584, at * 5 (Tenn. Ct. App. Feb. 4, 1994)(*perm. app. denied* May 9, 1994). The State vehemently asserts that the statutes were not intended to encompass charities which exist to raise funds for other charities. We note, as Youth Programs submits, that this argument has broad implications for a number of charitable institutions such as, for example, the United Way. In light of the ambiguity of the statutes and the historically liberal construction in favor of charitable institutions, we are loathe to disturb that construction here. *See id.* (quoting *Gallagher v. Butler*, 378 S.W.2d 161 (Tenn. 1963)(quoting *New England Mutual Life Ins. Co. v. Reece*, 83 S.W.2d 238 (Tenn. 1935))). Without so suggesting, if such institutions should not be recognized as charitable, it is within the province of the legislature to disturb the construction of the statutes historically afforded in Tennessee.

In light of the foregoing, Youth Programs is exempt from taxation under Tennessee Code Annotated 67-5-212(a) where Youth Programs uses the property exclusively for the charitable purposes for which Youth Programs was created. We accordingly affirm the trial court on this issue. We likewise affirm the trial court's determination that the wooded portion of the property is exempt from taxation. Costs of this appeal are taxed to the Appellants, the Tennessee State Board of Equalization and Shelby County Assessor of Property.

_____
DAVID R. FARMER, JUDGE